## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

THERESA M. SANTOS (fka THERESA M. PARON) and

MICHAEL J. SANTOS;

      Plaintiffs

v.                         Case No. _____

JOAQUIN ALTORO, ADMINISTRATOR,
RURAL HOUSING SERVICE; and

DONNA M. TOBEY (fka DONNA M. GARCIA); and

UNKNOWN HEIRS OF THE ESTATE OF
ABRAHAM BAUM (aka ABE BAUM)'; and

JOHN A. MILDE; and

LINDA L. MILDE; and

CITIZENS BANK, N.A.;

      Defendants

---

## <u>COMPLAINT FOR A CIVIL CASE</u>

      This case involves title to certain real estate in Marston Mills, Massachusetts, derived from certain mortgages and a foreclosure deed in favor of the Farmers Home Administration (now known as the Rural Housing Service), an agency of the United States Department of Agriculture, which mortgages, foreclosure deed, and subsequent deed of conveyance include errors in the legal description of the property.  Plaintiffs bring this case to reform the legal descriptions in the relevant documents of record or, alternatively, to establish title by adverse possession of the subject property, with the intent of quieting title thereto.

**Parties to the Complaint**

1. Plaintiff Theresa M. Santos (formerly known as Theresa M. Paron) is an individual and Massachusetts resident with an address of 75 Willington Avenue, Marston Mills, MA 02648.

2. Plaintiff Michael J. Santos is an individual and Massachusetts resident with an address of 75 Willington Avenue, Marston Mills, MA 02648.

3. Defendant Joaquin Altoro is the Administrator of the Rural Housing Service, an agency of the United Stated Department of Agriculture, with an address of 1400 Independence Avenue, SW, Room 5014, STOP 0701, Washington, DC 20250-0701.  The Rural Housing Service is the successor agency to the Farmers Home Administration.

4. Defendant Donna M. Tobey (formerly known as Donna M. Garcia) is an individual and, upon information and belief, a Massachusetts resident with a last known address of 57 Sandwich Road, Teaticket, MA 02536-5601.

5. Defendant Unknown Heirs of the Estate of Abraham Baum are the unknown heirs of Abraham Baum (aka Abe Baum), upon information and belief, last of 1445 Shore Parkway, Apartment 5D, Brooklyn, NY 11214.

6. Defendant John A. Milde is an individual and, upon information and belief, a Massachusetts resident with a last known address of 376 Route 6A, Apt. 14, East Sandwich, MA 02537-1442.

7. Defendant Linda L. Milde is an individual and, upon information and belief, a Massachusetts resident with a last known address of 38 Pearl Street, Hyannis, MA 02601-3921.

8. Defendant Citizens Bank, N.A. is a national banking association with a principal business address of 1 Citizens Plaza, Providence, RI 02903.

## Jurisdiction and Venue

9. The U.S. District Court has jurisdiction of this case under 28 U.S.C. § 1331 as a federal question arising under 28 U.S.C § 2410, specifically, to quiet title to property.

10. Venue in the District of Massachusetts is property as the property at issue is located in Massachusetts.

## Factual Allegations

11. By instrument recorded April 4, 1968, with Barnstable County Registry of Deeds ("Barnstable Deeds") in Book 1396, Page 427, Laskey Enterprises conveyed several parcels of land to Vladas Kulbokas and Veronika Kulbokas.  A copy of the Kulbokas Deed is attached hereto as Exhibit A.

12. Among others, the Kulbokas Deed included Lot 79 on a plan of land for "Connecticut Village" recorded with Barnstable Deeds in Plan Book 157, Page 97.  Lot 79 is also known by its street address, 75 Willington Avenue, Barnstable (Marston Mills), Massachusetts (the "Property").  A copy of the Connecticut Village Plan is attached hereto as Exhibit B.

13. By instrument recorded November 30, 1984, with Barnstable Deeds in Book 4337, Page 285, Mr. and Mrs. Kulbokas conveyed the Property to Donna M. Garcia and Ronald Mendes, at joint tenants.  A copy of the Garcia-Mendes Deed is attached hereto as Exhibit C.

14. By instrument recorded November 30, 1984, with Barnstable Deeds in Book 4337, Page 287, Ms. Garcia and Mr. Mendes granted a purchase-money mortgage on the Property to

Farmers Home Administration.  A copy of the FHA Mortgage is attached hereto as Exhibit D.

15. The legal description of the Property in the FHA Mortgage included several errors, specifically:

    a.  Although the FHA Mortgage identified the Property by its street address and lot number (Lot 79), it referenced the wrong Plan Book and Page for the relevant plan.

    b.  Additionally, the FHA Mortgage referred to a plan of land for Briarwood Village, not a plan of land for Connecticut Village.

    c.  Additionally, the FHA Mortgage purported to reference "Grantor's title," but the Book and Page reference is to the prior-owners' (Kulbokas) deed, not the Grantors' (Garcia and Mendes) deed.

16. At some point between November 30, 1984 and January 22, 1992, Ms. Garcia and Mr. Mendes defaulted on their obligations to FHA and FHA commenced proceedings to foreclose the FHA Mortgage.

17. By instrument recorded January 22, 1992, with Barnstable Deeds in Book 7844, Page 070, FHA recorded a Notice of Complaint for Approval of Mortgage Foreclosure filed with this Court in Civil Action No. 92-10028-C.  A copy of the FHA Notice is attached hereto as Exhibit D.1.

18. By instrument recorded March 31, 1992, with Barnstable Deeds in Book 7946, Page 034, FHA recorded an Order Authorizing Mortgage Foreclosure issued by this Court in Civil Action No. 92-10028-C.  A copy of the FHA Order is attached hereto as Exhibit D.2.

19. By instrument recorded June 25, 1992, with Barnstable Deeds in Book 8083, Page 222, FHA recorded a Certificate of Entry relative to its foreclosure of the FHA Mortgage.  A copy of the FHA Certificate is attached hereto as Exhibit D.3.

20. By instrument recorded June 25, 1992, with Barnstable Deeds in Book 8083, Page 223, FHA recorded a deed foreclosing Ms. Garcia's and Mr. Mendes' rights of redemption in the Property and conveying title of the Property to FHA as high bidder at auction.  A copy of the FHA Foreclosure Deed is attached hereto as Exhibit D.4.

21. All four of FHA's foreclosure related documents—the FHA Notice, FHA Order, FHA Certificate, and FHA Foreclosure Deed—repeat the same errors in the legal description of the Property introduced in the FHA Mortgage.

22.  All four of FHA's foreclosure related documents—the FHA Notice, FHA Order, FHA Certificate, and FHA Foreclosure Deed—refer to a second FHA mortgage on the Property, recorded May 19, 1986, with Barnstable Deeds in Book 5084, Page 298, which also repeats the same errors in the legal description of the Property introduced in the FHA Mortgage.  A copy of the FHA Second Mortgage is attached hereto as Exhibit E.

23. At the time of FHA's foreclosure, and as referenced in the FHA Notice and FHA Order related to Civil Action No. 92-10028-C, there were several other parties holding a record interest in the Property:

    a. Botello Lumber Co. held a Notice of Contract, recorded April 10, 1985, with Barnstable Deeds in Book 4483, Page 121.  A notice of dismissal of the suit for enforcement of the mechanic's lien evidenced by the Botello Notice was recorded June 1, 1993, with Barnstable Deeds in Book 8602, Page 298.

b.  Duarte & Perry Plumbing and Heating held a Notice of Contract, recorded October 4, 1985, with Barnstable Deeds in Book 4743, Page 219 and Book 4743, Page 221.  No statement of account or suit for enforcement of the mechanic's lien evidenced by the Duarte Notice was commenced and recorded within the time prescribed by statute, Massachusetts General Laws, Chapter 254.

c.  The Town of Barnstable held a tax taking, recorded January 27, 1989, with Barnstable Deeds in Book 6608, Page 094.  The tax taking was redeemed by FHA by instrument recorded July 26, 1993, with Barnstable Deeds in Book 8695, Page 076.

d.  Abe Baum held a mortgage, recorded April 5, 1989, with Barnstable Deeds in Book 6688, Page 33.  No discharge of the Baum Mortgage appears on record.  A copy of the Baum Mortgage is attached hereto as Exhibit F.

24. The docket for Civil Action No. 92-10028-C reflects completion of service on these other parties in interest, but no objections or other responses to FHA's complaint to foreclose the FHA Mortgage.  See Civil Action No. 92-10028-C.

25. By instrument recorded May 20, 1993, with Barnstable Deeds in Book 8583, Page 176, FHA recorded a deed conveying title of the Property to John A. Milde and Linda L. Milde.  A copy of the Milde Deed is attached hereto as Exhibit G.

26. While the legal description for the Property in the Milde Deed refers to the correct address (75 Willington Avenue) and the correct plan reference (Book 151, Page 97), it misidentifies the plan title (Briarwood Village, not Connecticut Village) and relies on the prior foreclosure of the Garcia-Mendes mortgage with all of its errors.

27. By instrument recorded May 20, 1993, with Barnstable Deeds in Book 8583, Page 178, Mr. and Mrs. Milde granted a purchase-money mortgage on the Property to FHA.  A copy of the Milde Mortgage is attached hereto as <u>Exhibit H</u>.

28. The legal description for the Property in the Milde Mortgage carries forward the same errors from the Milde Deed.

29. At some point between May 20, 1993 and September 6, 1996, Mr. and Mrs. Milde defaulted on their obligations to FHA and FHA commenced proceedings to foreclose the Milde Mortgage.

30. By instrument recorded September 6, 1996, with Barnstable Deeds in Book 10377, Page 126, FHA recorded a Notice of Complaint for Approval of Mortgage Foreclosure filed with this Court in Civil Action No. 230711.  A copy of the Milde Notice is attached hereto as <u>Exhibit H.1</u>.

31. By instrument recorded November 8, 1996, with Barnstable Deeds in Book 10475, Page 056, FHA recorded an Order Authorizing Mortgage Foreclosure issued by this Court in Civil Action No. 230711.  A copy of the Milde Order is attached hereto as <u>Exhibit H.2</u>.

32. By instrument recorded November 8, 1996, with Barnstable Deeds in Book 10475, Page 059, FHA recorded a Certificate of Entry relative to its foreclosure of the Milde Mortgage.  A copy of the Milde Certificate is attached hereto as <u>Exhibit H.3</u>.

33. By instrument recorded November 8, 1996, with Barnstable Deeds in Book 10475, Page 060, FHA recorded a deed foreclosing Mr. and Mrs. Milde's rights of redemption in the Property and conveying title of the Property to FHA as high bidder at auction.  A copy of the Milde Foreclosure Deed is attached hereto as <u>Exhibit H.4</u>.

34. All four of FHA's foreclosure related documents to the Milde Mortgage—the Milde Notice, Milde Order, Milde Certificate, and Milde Foreclosure Deed—repeat the same errors in the legal description of the Property introduced in the Milde Mortgage.

35. By instrument recorded October 1, 1997, with Barnstable Deeds in Book 10985, Page 80, Defendant Rural Housing Service (RHS), the successor agency to the FHA, recorded a deed conveying title of the Property to Plaintiff Theresa M. Santos (then known as Teresa M. Paron).  A copy of the Paron Deed is attached hereto as <u>Exhibit I</u>.

36. The legal description the Property in the Paron Mortgage repeats the same errors in the legal description of the Property introduced in the Milde Mortgage, specifically that the legal description for the Property refers to the correct address (75 Willington Avenue) and the correct plan reference (Book 151, Page 97), but it misidentifies the plan title (Briarwood Village, not Connecticut Village).

37. Upon information and belief, Mr. Baum died on April 15, 2002, last a resident of Brooklyn, New York.  As of the filing hereof, no obituary or probate file has been located for Mr. Baum.

38. By instrument recorded February 9, 2005, with Barnstable Deeds in Book 19517, Page 333, Ms. Paron (then known as Theresa M. Santos) conveyed title of the Property to herself and Michael J. Santos.  A copy of the Santos Deed is attached hereto as <u>Exhibit J</u>.

39. The Santos Deed describes the Property by reference to Lot 79 on an unnamed plan and by reference to the Milde Foreclosure Deed.

40. Upon information and belief, Mr. Mendes died on July 16, 2016, last a resident of Marston Mills, Massachusetts.  To the extent Mr. Mendes held any residual interest in the Property, such interest passed automatically to Ms. Garcia as his surviving joint tenant.

41. By instrument recorded February 27, 2021, with Barnstable Deeds in Book 34506, Page 147, Mr. and Mrs. Santos granted a mortgage on the Property to Citizens Bank, N.A.. A copy of the Santos Mortgage is attached hereto as <u>Exhibit K.</u>

42. The Santos Mortgage describes the Property by reference to the street address (75 Willington Avenue), by reference to Lot 79 on an unnamed plan, and by reference to the Santos Deed.

43. The Property is identified by the Town of Barnstable (Marston Mills being a neighborhood thereof) as 75 Willington Avenue, Marston Mills, Massachusetts, Tax ID number 103/041, shown as Lot 79 on Plan Reference 157/97. A copy of the Barnstable Property Record Card is attached hereto as <u>Exhibit L.</u>

<div align="center"><strong><u>Causes of Action</u></strong></div>

<strong><u>Count 1 – Reformation of Legal Description</u></strong>

44. Plaintiffs repeat and reallege the facts set forth in the foregoing paragraphs as if fully included herein.

45. The legal description of the Property was last properly identified in the Garcia-Mendes Deed (<u>Exhibit C</u>) as Lot 79 on a plan of "Connecticut Village" recorded as Plan Book 157, Page 97.

46. The legal description of Property as set forth in the Garcia-Mendes Deed is consistent with the prior chain of title and with the property information of the Town of Barnstable as shown on the Property Record Card (<u>Exhibit L</u>).

47. At all times relevant hereto, the parties have intended to convey, mortgage, foreclose, and otherwise refer to the Property at 75 Willington Avenue, Marston Mills, Massachusetts,

also known as Lot 79 on a plan of "Connecticut Village" recorded as Plan Book 157, Page 97.

48. Through a series of mutual mistakes and inadvertent errors, the legal description of the Property has been misidentified by reference to the wrong plan name (Briarwood Village) and wrong plan reference (Book 214, Page 97) and by reference to prior documents referring the wrong plan name and plan reference.

49. The following documents in the chain of title bear the mutual mistakes in the legal description of the Property:

    a.  The FHA Mortgage from Garcia-Mendes.  (Exhibit D)

    b.  The Notice of Foreclosure as to Garcia-Mendes.  (Exhibit D.1)

    c.  The Order Authorizing Foreclosure as to Garcia-Mendes.  (Exhibit D.2)

    d.  The Certificate of Entry as to Garcia-Mendes.  (Exhibit D.3)

    e.  The Foreclosure Deed as to Garcia-Mendes.  (Exhibit D.4)

    f.  The FHA Second Mortgage from Garcia-Mendes.  (Exhibit E)

    g.  The FHA Deed to Milde.  (Exhibit G)

    h.  The FHA Mortgage from Milde.  (Exhibit H)

    i.  The Notice of Foreclosure as to Milde.  (Exhibit H.1)

    j.  The Order Authorizing Foreclosure as to Milde.  (Exhibit H.2)

    k.  The Certificate of Entry as to Milde.  (Exhibit H.3)

    l.  The Foreclosure Deed as to Milde.  (Exhibit H.4)

    m.  The RHS Deed to Paron.  (Exhibit I)

    n.  The Paron Deed to Santos.  (Exhibit J)

    o.  The Santos Mortgage to Citizens Bank.  (Exhibit K)

50. In order to correct these errors in the chain of title, the legal descriptions in the listed documents should be reformed to identify the Property correctly as 75 Willington Avenue, Marston Mills, Massachusetts, also known as Lot 79 on a plan of "Connecticut Village" recorded as Plan Book 157, Page 97.

51. Because the other interested parties were given notice of the FHA foreclosure (Mr. Baum) and/or because their interests have otherwise been discharged (Town of Barnstable) or expired of record (Botello; Duarte), no junior interest holder will be unfairly prejudiced by the reformations.

WHEREFORE, Plaintiffs request that an Order issue reforming the legal description of the Property in chain of title.

## Count II – Adverse Possession

52. Plaintiffs repeat and reallege the facts set forth in the foregoing paragraphs as if fully included herein.

53. Plaintiffs have been in actual possession of the Property since Mrs. Santos (then known as Ms. Paron) acquired title of the Property by deed from RHS in 1997.  See Exhibit I.

54. Such possession by Plaintiffs has been exclusive, continuous, open and notorious, and under color of title, and thereby hostile to any prior interests in the Property for more than 20 years.

55. The Property possessed by Plaintiffs is that identified in the Garcia-Mendes Deed as 75 Willington Avenue, Marston Mills, Massachusetts, also known as Lot 79 on a plan of "Connecticut Village" recorded as Plan Book 157, Page 97.

56. Plaintiffs are unaware of any competing claims of any prior interest holders to title of the Property.

WHEREFORE, Plaintiffs request that an Order issue quieting title to the Property in their favor

by adverse possession against all prior owners.

Plaintiffs further request such additional or alternative relief as the Court deems appropriate.

<div style="margin-left:40%">

Respectfully submitted,
THERESA M. SANTOS and
MICHAEL J. SANTOS, Plaintiffs
By and through their attorneys,

/s/  Scott C. Owens

Scott C. Owens, Esq. (BBO 654406)
First American Law Group
800 Boylston Street, Suite 2820
Boston, MA 02199
617-772-9272
sowens@firstam.com

</div>

January 25 , 2022

<div style="text-align:center">

**Certification**

</div>

Under Federal Rule of Civil Procedure 11, by signing below, we certify to the best of our
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or
reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity for further
investigation or discovery; and (4) the complaint otherwise complies with the  requirements of
Rule 11.

Theresa M. Santos

Michael J. Santos

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

LASKEY ENTERPRISES, INC., a corporation duly established under the
laws of the Commonwealth of Massachusetts and having its usual place
of business at Barnstable (Hyannis),

05290

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

Barnstable   County, Massachusetts,

for consideration paid, grants to   VLADAS KULBOKAS and VENONIKA KULBOKAS, husband
and wife, as tenants by the entirety, both of 51 Thomas Park, South
Boston, Suffolk County, Massachusetts,

with quitclaim covenants

the land in the Town of Barnstable, in the village of Marstons Mills,
bounded and described as follows:

PARCEL I.

    Northeasterly   by Willimantic Drive, a public way, 125 feet;
    Southeasterly   by Lot 17, 160.59 feet;
    Southwesterly   by land now or formerly of Harold W. Knowlton
               et al, 125 feet;   and
    Northwesterly   by Lot 19, 160.78 feet.

    Containing 20,085 square feet.

    Said lot is shown on the hereinafter mentioned plan as LOT 18.

PARCEL II.

    Northeasterly   by Willimantic Drive, a public way, 125 feet;
    Southeasterly   by Lot 19, 160.46 feet;
    Southwesterly   by land now or formerly of Harold W. Knowlton
               et al, 125 feet;   and
    Northwesterly   by Lot 21, 160.13 feet.

    Containing 20,035 square feet.

    Said lot is shown on the hereinafter mentioned plan as LOT 20.

PARCEL III.

    Northeasterly   by Willington Avenue, a private way, 130 feet;
    Southeasterly   by Lot 78, 160 feet;
    Southwesterly   by Lot 81, 130 feet;   and
    Northwesterly   by Lot 80, 160 feet.

    Containing 20,800 square feet.

    Said lot is shown on the hereinafter mentioned plan as LOT 79.

All of said boundaries of the aforementioned lots as shown on a
plan entitled "Connecticut Village in Marstons Mills, Barnstable,
Mass. on Old Cape Cod overlooking Shubael Pond, owned and developed
by William F. Sledjeski, Benjamin Hochberg, Joseph Coughlin and
Adolphe Dugas, Scale 1" = 100', Ed Kellogg, C. E. - Osterville, 1960",
which plan is recorded at the Barnstable Registry of Deeds in Plan
Book 157, Page 97.

PARCEL IV.

    Northeasterly   by a portion of Lot 112 and a portion of
               Lot 110, 140 feet;
    Southeasterly   by Lot 109, 150.02 feet;
    Southwesterly   by New London Ave., a private way, 140 feet;   and
    Northwesterly   by Lot 113, 150 feet.

    Containing 21,001 square feet.

    Said lot is shown on the hereinafter mentioned plan as LOT 111.

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

BOOK 1396 PAGE 428

All of said boundaries as shown on a plan of land entitled "Briarwood Village Subdivision of plan of land in Marstons Mills, Barnstable, Mass., for Hasey Enterprises Inc., Scale 1" = 80', dated August, 1967, being a subdivision of Lot 116 as shown on a plan recorded at the Barnstable County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey Consultants, Inc., 608 Main Street, West Yarmouth, Mass.", which plan is recorded at the Barnstable County Registry of Deeds in Plan Book 214, Page 97.

All four of the above described lots are conveyed subject to and together with the benefit of all rights of way, easements, restrictions and takings of record insofar as the same are now in force and applicable, including but not limited to the following:

Takings by the Town of Barnstable for the layout of Race Lane (Book 482, Page 146) and the layout of Willimantic Drive (Book 1198, Page 454); Easements to Cape & Vineyard Electric Company et al (Book 1187, Page 451); and Grantor's Easements and Restrictions (Book 1377, Page 944).

For Grantor's title, see deed recorded in Barnstable County Registry of Deeds in Book 1374, Page 1024. For authority to execute the deed, see Certificate of the Clerk recorded in Book 1377, Page 943.

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

IN WITNESS WHEREOF, the said LASKEY ENTERPRISES INC., has caused its corporate seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by PHILIP F. GOGAN, its Assistant Treasurer, hereto duly authorized this 3rd day of April, 1968.

Executed as a sealed instrument this 3rd day of April, 19 68.
Signed and sealed in presence of:      LASKEY ENTERPRISES, INC.

_____      By: _____
Robert J. Donahue                          Philip F. Gogan, Assistant
                                           Treasurer

_____      _____

### The Commonwealth of Massachusetts

Barnstable,                    ss.                    April 3, 1968.

Then personally appeared the above named   PHILIP F. GOGAN, Assistant Treasurer,

and acknowledged the foregoing instrument to be the free act and deed, of LASKEY ENTER-
PRISES, INC.,

Before me, Robert J. Donahue, Notary Public
My commission expires

CANCELLED 1400

BOOK 1396 PAGE 429        REC'D APR 4 1968 AND RECORDED

EXHIBIT B

157-97
NOT AN OFFICIAL COPY
"CONNECTICUT · VILLAGE"
IN MARSTON MILLS-BARNSTABLE-MASS. ON
OLD CAPE COD
OVERLOOKING SHUBAEL POND
OWNED & DEVELOPED BY
WILLIAM F. SLEDJESKI,
BENJAMIN HOCHBERG · JOSEPH COUGHLIN · ADOLPHE DUGAS.
SCALE
FROM THE OFFICE OF ED. KELLOGG, C.E.-OSTERVILLE.
1960
RACE LANE
To HYANNIS
WEBSTER ROAD
NEW LONDON AVE.
COLUMBIA AVE.
WILLINGTON AVE.
HARTFORD AVE.
NEW HAVEN AVE.
WILLIMANTIC DRIVE
PROSPECT ST.
ROUTE 149
AIRPORT
SHUBAEL POND
41
6.89 ACRES±
Harold W. Knowlton
Fritz B. Talbot
Hilding Hord
NILS V. NELSON
See L.C. Plan No 12034A
WE, THE UNDERSIGNED BOARD OF SURVEY, APPROVE THIS PLAN AND CERTIFY THAT IT COMPLIES WITH ALL APPLICABLE LAWS AND REGULATIONS.
BARNSTABLE BOARD OF SURVEY
AUG 6 - 1960
Plan-Book 157 Page 97
157- 97



EXHIBIT C

NOT                              NOT
AN                               AN
BOOK 4337 PAGE 285 O F F I C QUITCLAIM DEED    O F F I C 58926
              C O P Y                          C O P Y

WE, VLADAS KULBOKAS and VERONIKA KULBOKAS husband and wife as
tenants by the entirety, both of 5526 21st Avenue, South Gulfport,
Florida (33707) for consideration paid in the amount of FOURTEEN
THOUSAND FIVE HUNDRED and 00/100 ($14,500.00) DOLLARS grants to
DONNA M. GARCIA and RONALD GENDES as joint tenants both of 902
Alewife Road, South Yarmouth, Barnstable County, Massachusetts
(02664) with QUITCLAIM COVENANTS

the land in Barnstable (Marstons Mills), Barnstable County, Mass-
achusetts, more particularly bounded and described as follows:

NORTHEASTERLY     by Willington Avenue, a private way, 130 feet;

SOUTHEASTERLY     by Lot 78, 160 feet;

SOUTHWESTERLY     by Lot 81, 130 feet; and

NORTHWESTERLY     by Lot 80, 160 feet.

Containing 20,800 square feet.

Said Lot is shown on the hereinafter mentioned plan as LOT 79.

All of said boundaries are shown on a plan entitled "Connecticut
Village in Marstons Mills, Barnstable, Mass. on Old Cape Cod over-
looking Shubael Pond, owned and developed by william F. Sledjeski,
Benjamin Hochberg, Joseph Coughlin and Adolphe Dugas, Scale 1" = 100',
Ed Kellogg, C.E. - Osterville, 1960" which plan is recorded at the
Barnstable County Registry of Deeds in Plan Book 157, Page 97.

Together with the right to use the ways shown on said plan in common
with others legally entitled thereto.

The above described premises are conveyed subject to an Easement in
favor of the Cape and Vineyard Electric Company, et al dated January
3, 1963 and being duly recorded in Barnstable County Registry of
Deeds, Book 1187, Page 451, and the easements and restrictions in
Book 1377, Page 944.
For grantors title see deed recorded with said Registry in Book 1396,
Page 427.

WITNESS our hands and seals this 30th day of Oct, 1984.

                              *Vladas Kulbokas*
                              _____
                              Vladas Kulbokas

                              *Veronika Kulbokas*
                              _____
                              Veronika Kulbokas

N BOOK **4337** PAGE **286**

STATE OF FLORIDA

COUNTY: *Pinellas*                    DATE: *10-30-84*

Then personally appeared the above named Vladas Kulbokas and
Veronika Kulbokas and acknowledged the foregoing instrument to be
their free act and deed before me.

                    *Joan C. Rutledge*
                    Notary Public

My commission expires: Notary Public, State of Florida at Large
                       My Commission Expires AUG. 24, 1985

Seal



№ 6055

STATE OF FLORIDA   } SS.   I, Karleen F. De Blaker, Clerk of the County of Pinellas, and also Clerk of the
COUNTY OF PINELLAS }         Circuit Court of the said County, the same being a Court of Record.

                             **Joan C. Rutledge**

**DO HEREBY CERTIFY THAT** _____
whose name is subscribed to the certificate of the proof or acknowledgment of the annexed
instrument and thereon written, was at the time of taking such proof and acknowledgment,
a Notary Public, in and for said County, residing therein, duly commissioned and sworn,
and authorized by the laws of said State to take the acknowledgments and proofs of deeds
or conveyances, for land, tenements or hereditaments in said State, to be recorded therein.
And further, that I am well acquainted with the handwriting of such Notary Public, and
verily believe the signature to said certificate of proof or acknowledgment is genuine; that
I have compared the impression of the seal affixed thereto with a specimen impression
thereof filed or deposited in my office, and that I believe the impression of the seal upon
the original certificate is genuine.

    **IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of
the said Court and County, this _____6th_____ day of ___November___, 19__84__

    KARLEEN F. De BLAKER, Clerk Circuit Court

    By *Carroll C. Kirkade*
                                    Deputy Clerk

RECORDED NOV 30 84

EXHIBIT D

**USDA-FmHA**
Form FmHA 427-1 MA
(Rev. 10-21-80)

Position 5

BOOK 4337 PAGE 287          58927

**REAL ESTATE MORTGAGE DEED FOR MASSACHUSETTS**

NOT AN OFFICIAL COPY

THIS MORTGAGE is made and entered into by __RONALD C. MENDES, JR. AND__

__DONNA M. GARCIA__ of __902 ALEWIFE ROAD, SOUTH YARMOUTH, MA, 02664__

residing in __BARNSTABLE__ County, State of __MASSACHUSETTS__

whose post office address is __NONE__ , in said State, herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or asssumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| NOVEMBER 30,1984 | $54,250.00 | 11.8750 | OCTOBER 30, 2017 |

(If the interest rate is less than _____% for farm ownership or operating loan(s) secured by this instrument, then the rate may be changed as provided in the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, assign and forever warrant unto the Government the following property situated in

__BARNSTABLE__ County(ies), State of __MASSACHUSETTS__ .

Tho land in the Town of Barnstable, in the village of Marstons Mills, bounded and described as follows:

Parcel III

Northeasterly    by Willington Avenue, a private way, 130 feet,
Southeasterly    by Lot 78, 160 feet,

FmHA 427-1 MA (Rev. 10-21-80)

BOOK 4337 PAGE 288

Southwesterly    by Lot 81, 130 feet; and
Northwesterly    by Lot 80, 100 feet.
Containing 20,800 square feet. Said lot is shown on the hereinafter
mentioned plan as Lot 79.

All of said boundaries as shown on a plan of land entitled "Briarwood
Village, Subdivision of plan of land in Marstons Mills, Barnstable, Ma.,
for Laskey Enterprises, Inc. Scale 1" = 80', dated August, 1967, being
a subdivision of Lot 41A as shown on a plan recorded at the Barnstable
County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey
Consultants, Inc., 608 Main Street, West Yarmouth, Mass.", which plan
is recorded at the Barnstable County Registry of Deeds in Plan Book 214,
Page 97.

Said Lot #79 is conveyed subject to and together with the benefit of all
rights of way, easements, restrictions and taking of record insofar as
the same are now in force and applicable, including but not limited to
the following:

Takings by the Town of Barnstable for the layout of Race Lane
(Book 482, Page 146) and the layout of Willimantic Drive (Book
1198, Page 454), Easements to Cape & Vineyard Electric Company
et al (Book 1187, Page 451), and Grantor's Easements and Rest-
rictions (Book 1377, Page 944).

For Grantor's title, see deed recorded in Barnstable County
Registry of Deeds in Book 1396, Page 427.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harm-less the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Govern-ment, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the pre-servation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government as described by this instrument, with interest, shall be immediately due and pay-able by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Govern-ment determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

BOOK 4337 PAGE 289

(7)  To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, sub-ordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefits of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

BOOK **4337** PAGE **290**

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at 358 N. Pleasant St., Amherst, Massachusetts 01002, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(23)  Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____

day of _____ NOVEMBER _____ , 19 84.

Signed, sealed, and delivered in the
presence of:

_____ (Witness)            _____ (SEAL)

_____ (Witness)            _____ (SEAL)

STATE OR COMMONWEALTH OF MASSACHUSETTS

COUNTY OF _____ BARNSTABLE _____            **ACKNOWLEDGMENT**

On this __30th__ day of __NOVEMBER__ , 19 __84__ before me, the undersigned, a Notary Public in and

for said State or Commonwealth and County, personally appeared __RONALD C. MENDES, JR.__

_____ AND DONNA M. GARCIA _____ ,

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires _____ 1/5/90 _____            _____ Notary Public

(NOTARIAL SEAL)

RECORDED NOV 30 84

EXHIBIT D.1     BOOK 7844 PAGE 070

04041

NOT FILED IN CLERK'S OFFICE
JAN DISTRICT COURT
US DISTRICT COURT

NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>CIVIL ACTION NO.</td></tr>
<tr><td>RONALD C. MENDES, JR.,</td><td>)</td><td></td></tr>
<tr><td>DONNA M. GARCIA, a/k/a</td><td>)</td><td>92-10023C</td></tr>
<tr><td>DONNA M. TOBEY,</td><td>)</td><td></td></tr>
<tr><td>BOTELLO LUMBER CO.,</td><td>)</td><td></td></tr>
<tr><td>TOWN OF BARNSTABLE, MA,</td><td>)</td><td></td></tr>
<tr><td>DUARTE & PERRY PLUMBING</td><td>)</td><td></td></tr>
<tr><td>AND HEATING,</td><td>)</td><td></td></tr>
<tr><td>ABE BAUM,</td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
</table>

## NOTICE OF COMPLAINT FOR APPROVAL (SOLDIERS' AND SAILORS' CIVIL RELIEF ACT OF 1940) OF MORTGAGE FORECLOSURE

TO: Ronald C. Mendes, Jr., 47 Cammet Lane, Marstons Mills, MA
02648, or 75 Willington Avenue, Marstons Mills, MA 02648
Donna M. Garcia, a/k/a Donna M. Tobey, 75 Willington Avenue,
Marstons Mills, MA 02648
Botello Lumber Co. P.O. Box V, Osterville, MA 02655, or P.O.
Box 1589, Bowdoin Road, Mashpee, MA 02649
Town of Barnstable, Collector of Taxes, P.O. Box 40, 397 Main
Street, Hyannis, MA 02601
Duarte & Perry Plumbing & Heating, 145 Route 149, P.O. Box
270, Marstons Mills, MA 02648
Abe Baum, 1445 Schore Parkway, #50, Brooklyn, NY 11214

and to all persons entitled to the benefits of the Soldiers' and

Sailors' Civil Relief Act of 1940.

The United States of America as the holder of two mortgages

of real property on Lot 79, 75 Willington Avenue, County of

Barnstable, Massachusetts, the first mortgage given by Donna M.

Garcia and Ronald C. Mendes, Jr. to the Farmers Home

Administration (FmHA), which is dated November 30, 1984 and

recorded in Book 4337 at Pages 287-290 of the Registry of Deeds

for Barnstable County, and second mortgage, given by Donna M.

BOOK 7844 PAGE 071

N O T
A N
O F F I C I A L
C O P Y 2

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

Garcia and Ronald C. Mendes, Jr. to the Farmers Home
Administration which is dated May 13, 1986 and recorded in Book
5084 at Pages 298-301 of the Registry of Deeds for Barnstable
County, has filed in the United States District Court for the
District of Massachusetts a complaint for authority under the
Soldiers' and Sailors' Civil Relief Act of 1940 to foreclose the
two mortgages by entry and possession and by the exercise of a
power of sale contained in the two mortgages.

     If you are entitled to the benefits of the Soldiers' and
Sailors' Civil Relief Act of 1940 and object to a foreclosure of
the two mortgages, you (or your attorney) should file an
appearance and an answer in the United States District Court on or
before February 20, 1992, or you may be forever barred from
claiming that the foreclosure is invalid under the Soldiers' and
Sailors' Civil Relief Act of 1940.

DATED: 1-14-92

                              ROBERT J. SMITH, JR., Clerk

                         By: Lisa M Hanhan
                              DEPUTY CLERK

RECORDED JAN 22 92

EXHIBIT D.2

BOOK 7946 PAGE 034

18876

RECEIVED
U.S. ATTORNEY
BOSTONNHOSE

A &N '92

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

A TRUE COPY ATTEST
Robert ... ...
U. ... District Court
District of Massachusetts

Location: Lot 79, 75 Willington Avenue
Marstons Mills, Barnstable, MA 02648

```
UNITED STATES OF AMERICA,    N O T  )
              Plaintiff,     A N   )
                             O F F I C I A L      O F F I C I A L
         v.                  C O P Y )    CIVIL ACTION No. 92-10028-C
                                     )
RONALD C. MENDES, JR,                )
DONNA M. GARCIA, a/k/a               )
   DONNA M. TOBEY,                   )
BOTELLO LUMBER CO.,                  )
TOWN OF BARNSTABLE, MA,              )
DUARTE & PERRY PLUMBING              )
   AND HEATING,                      )
ABE BAUM,                            )
              Defendants.            )
```

### ORDER AUTHORIZING MORTGAGE FORECLOSURE

Upon the attached affidavit of service of notice by the
United States Attorney, and no person entitled to the benefits of
the Soldiers' and Sailors' Civil Relief Act of 1940 having
appeared to object to a foreclosure of two mortgages of real
property on Lot 79, 75 Willington Avenue, Barnstable,
Massachusetts; the first mortgage given by Donna M. Garcia and
Ronald C. Mendes, Jr. to the United States Farmers Home
Administration, which is dated November 30, 1984 and recorded in
Book 4337 at Pages 287-290 of the Registry of Deeds for Barnstable
County, Massachusetts, and second mortgage, given by Donna M.
Garcia and Ronald C. Mendes, Jr. to the Farmers Home
Administration which is dated May 13, 1986 and recorded in Book
5084 at Pages 298-301 of the Registry of Deeds for Barnstable
County.

IT IS ORDERED that the United States of America is authorized

BOOK 7946 PAGE 035

NOT AN OFFICIAL COPY

2

NOT AN OFFICIAL COPY

under the Soldiers' and Sailors' Civil Relief Act of 1940 to make an entry and to sell the mortgaged property in accordance with the powers contained in the mortgages.

NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY

DATED: March 27, 1992

Andrew G. Coffey

UNITED STATES DISTRICT JUDGE

RECORDED MAR 31 92

EXHIBIT D.3

BOOK 8083 PAGE 222

39071

**We hereby Certify** that on the 19th day of May in the year one
thousand nine hundred Ninety-two we were present and Ira
...Ronald..M..Koontz..C.O.P.Y FmHA Representative, for and on
behalf of the United States of America, acting through the Farmers
Home Administration, U.S. Department of Agriculture, Washington,
D.C., the mortgagee named in a certain first mortgage given by
Ronald C. Mendes, Jr. and Donna M. Garcia, of Marstons Mills
Barnstable County, MA to the United States of America, acting
through the Farmers Home Administration, U.S. Dept. of
Agriculture, Washington, D.C., dated November 30, A.D. 1984, and
recorded in Barnstable County Registry of Deeds, Book 4337 pages
287-290, and in a certain second mortgage given by Ronald C.
Mendes, Jr. and Donna M. Garcia, of Marstons Mills, Barnstable
County, MA to the United States of America, acting through the
Farmers Home Administration, U.S. Dept. of Agriculture,
Washington, D.C. dated May 13, A.D. 1986, and recorded in
Barnstable County Registry of Deeds, Book 5084 pages 298-301
make an open, peaceable and unopposed entry on the premises
described in said mortgages, for the purpose, by him declared, of
foreclosing said mortgages for breach of conditions thereof.

RICHARD J. HEFFERNAN
DEPUTY U.S. MARSHAL

...Thomas..D'Andrea...............
FmHA REPRESENTATIVE

### The Commonwealth of Massachusetts

....................ss............19 . Then personally appeared
the above named....................and ..........................
and made oath that the above certificate by them subscribed is
true, before me -

..............................., Notary Public

My Commission Expires..........................19

..............19 at.........o'clock and.....minutes........M.
   Received and entered with................Deeds,
Book........Page.....and reference made, as by law required.
         Attest..........................., Register

RECORDED JUN 25 92

Location: Lot 79, 75 Willington Avenue
Marstons Mills, MA 02648

EXHIBIT D.4

BOOK 8083 PAGE 223

FORECLOSURE DEED (INDIVIDUAL) 918

NOT

NOT 39072

I, Theodore L. Fusaro, State Director AN
for and on behalf of the United States of America, acting through the Farmers Home
Administration, U.S. Dept. of Agriculture, Washington, D.C., First A L holder of a mortgage
COPY
from Ronald C. Mendes, Jr. and Donna M. Garcia, of Marstons Mills, Barnstable County, MA
to the Farmers Home Administration, USDA, Washington, D.C.
NOT T
dated November 30, 1984    recorded with Barnstable County Registry of Deeds
Book 4337 Page 287-290,

OFFICIAL    OFFICIAL
COPY    COPY

and holder of a second mortgage from Ronald C. Mendes, Jr. and Donna M. Garcia, of
Marstons Mills, Barnstable County, MA to the Farmers Home Administration, USDA,
Washington, D.C. dated May 13, 1986, recorded with Barnstable County Registry of
Deeds, Book 5084, Pages 298-301, by the power conferred by said mortgages and
every other power for one-hundred five thousand Dollars ($105,000.00), grant to
Farmers Home Administration, USDA, Washington, D.C. the premises conveyed by
said mortgages.

Location: Lot 79, 75 Willington Ave.
Marstons Mills, MA 02648

**Witness** hand and seal this **1st** day of **June,** **1998**

Caroline E. Ryder

Farmers Home Administration

THEODORE L. FUSARO
State Director

Lynn Madejewski

**The Commonwealth of Massachusetts**

Hampshire County    ss. Amherst    June 1, 1992

Then personally appeared the above named  Theodore L. Fusaro
and acknowledged the foregoing instrument to be  the  free act and deed, before me of the
Farmers Home Administration, U.S. Department of Agriculture.

Christine S. Laprade    Notary Public —

My Commission expires    April 24,    19 98

BOOK 8083 PAGE 224

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

Affidavit

Theodore L. Fusaro, acting for and in behalf of the Farmers Home Administration, United States Department of Agriculture, named in the foregoing deed make

oath and say that the principal, and interest

A N
O F F I C I A L
C O P Y

A N
O F F I C I A L
C O P Y

obligation

mentioned in the mortgage above referred to was not paid or tendered or performed when due or prior

to the sale, and that I published on the    16th, 23rd and 30th                    day of

April,                                                                                    1992

in the   Barnstable Patriot,

a newspaper published, or by its title page purporting to be published, in Hyannis, Barnstable, MA

and having a/circulation therein, a notice of which the following is a true copy:
general

SEE ATTACHMENT A
XXNXXX XXXXXXXXXXXX

I also complied with Chapter 244, Section 14, of Mass. Gen. Laws, as amended,
by mailing the required notices by registered mail, return receipt requested.

Pursuant to said notice at the time and place therein appointed,

I sold the mortgaged premises at public auction by  Richard Heffernan, Deputy U.S. Marshal,

an auctioneer, to  Farmers Home Administration, USDA, Washington, D.C.,

above named, for  one-hundred five thousand                                    Dollars
($105,000.00)
bid by   Ronald M. Koontz          being the highest bid made therefor at said auction
         FmHA Representative on 5/19/92
         on behalf of FmHA

_Theodore L. Fusaro_
Theodore L. Fusaro, State Director

U.S. Department of Agriculture
Farmers Home Administration

Signed and sworn to by the said  Theodore L. Fusaro

June 1,                           1992   , before me

_Christine J. Laprade_
Christine J. Laprade          XXXXXXXX  XXXXXXXXXX
Notary Public

My Commission expires................ April 24,      19  98

Location: Lot 79, 75 Willington Avenue
Marstons Mills, MA 02648

ATTACHMENT A

BOOK 8083 PAGE 225

```
    N O T                N O T
    A N                  A N
O F F I C I A L      O F F I C I A L
    C O P Y              C O P Y

    N O T                N O T
    A N                  A N
O F F I C I A L      O F F I C I A L
    C O P Y              C O P Y
```

April 16, 1992   *The Barnstable Patriot*   Hyannis, Massachusetts

---

### MORTGAGEE'S SALE OF REAL ESTATE

By virtue of and in execution of the power of sale contained in two mortgages given by Ronald C. Mendes, Jr. and Donna M. Garcia to the Farmers Home Administration, USDA, present holder, the first dated November 30, 1984 and recorded in Book 4337, at Pages 287-290 of the Registry of Deeds for Barnstable County, and the second dated May 13, 1986 and recorded in Book 5084 at Pages 298-301 in the Registry of Deeds for Barnstable County, for property known as Lot 79, 75 Willington Avenue, Marstons Mills, a village in the town of Barnstable, Massachusetts, for breach of conditions of said two mortgages and for the purpose of foreclosing, the same will be sold at public auction on Tuesday, May 19, 1992 at 11:00 a.m. on the premises more fully described in said mortgages: The land in the Town of Barnstable, in the village of Marstons Mills, bounded and described as follows:

Parcel III

| | |
|---|---|
| Northeasterly | by Willington Avenue, a private way, 130 feet, |
| Southeasterly | by Lot 78, 160 feet, |
| Southwesterly | by Lot 81, 130 feet; and |
| Northwesterly | by Lot 80, 160 feet. |

Containing 20,800 square feet. Said lot is shown on the hereinafter mentioned plan as Lot 79.

All of said boundaries as shown on a plan of land entitled "Briarwood Village, Subdivision of plan of land in Marstons Mills, Barnstable, Ma., for Laskey Enterprises, Inc., Scale 1" = 80', dated August, 1967, being a subdivision of Lot 41A as shown on a plan recorded at the Barnstable County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey Consultants, Inc., 608 Main Street, West Yarmouth, Mass.", which plan is recorded at the Barnstable County Registry of Deeds in Plan Book 214, Page 97.

Said Lot #79 is conveyed subject to and together with the benefit of all rights of way, easements, restrictions and taking of record insofar as the same are now in force and applicable, including but not limited to the following:

Takings by the Town of Barnstable for the layout of Race Lane (Book 482, Page 146) and the layout of Willimantic Drive (Book 1198, Page 454), Easements to Cape & Vineyard Electric Company et al (Book 1187, Page 451), and Grantor's Easements and Restrictions (Book 1377, Page 944).

For Grantor's title, see deed recorded in Barnstable County Registry of Deeds in Book 1396, Page 427.

TERMS OF SALE: Minimum deposit of $5,000.00 drawn by certified check or bank check made payable to UNITED STATES DEPARTMENT OF JUSTICE, balance in twenty days. Time is of the essence. Deposit paid at time of sale will be forfeited if the Purchaser does not comply strictly with the terms of the sale. Said sale is made subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgages, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deeds. Other terms, is any, to be announced at the sale.

Wayne A. Budd
United States Attorney
By: ANN M. D'ARPINO
Special Assistant U.S. Attorney
1107 J. W. McCormack POCH
Boston, MA 02109
(617) 223-9398

The Barnstable Patriot
April 16, April 23 & April 30, 1992

RECORDED JUN 25 92

EXHIBIT E

N O T
A N
O F F I C I A L
C O P Y

USDA-FmHA
Form FmHA 427-1 MA
(Rev. 10-21-80)

Position 5

BOOK 5084 PAGE 298

33083

**REAL ESTATE MORTGAGE DEED FOR MASSACHUSETTS**

THIS MORTGAGE is made and entered into by RONALD C. MENDES, JR. and DONNA M. GARCIA

47 CAMMET LANE, MARSTONS MILLS

residing in _____BARNSTABLE_____ County, State of _____MASSACHUSETTS_____

whose post office address is _____ in said State,
herein called "Borrower," and;

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 13, 1986 | $21,000.00 | 9.5% | 04-13-2019 |

(If the interest rate is less than _____% for farm ownership or operating loan(s) secured by this instrument, then the rate may be changed as provided in the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, assign and forever warrant unto the Government the following property situated in

_____BARNSTABLE_____ County(ies), State of _____MASSACHUSETTS_____

The land in the Town of Barnstable, in the village of Marstons Mills, bounded and described as follows:

PARCEL III

Northeasterly   by Willington Avenue, a private way, 130 feet,
Southeasterly   by Lot 78, 160 feet,

FmHA 427-1 MA (Rev. 10-21-80)

BOOK 5084 PAGE 299

Southwesterly by Lot 81, 130 feet, and
Northwesterly by Lot 80, 160 feet.

Containing 20,800 square feet.
Said lot is shown on the hereinafter mentioned plan as Lot 79.

All of said boundaries as shown on a plan of land entitled "Briarwood
Village, Subdivision of Plan of land in Marstons Mills, Barnstable,
MA, for Laskey Enterprises, Inc., Scale 1" = 80', dated August, 1967,
being a subdivision of Lot 41A as shown on a plan recorded at the
Barnstable County Registry of Deeds in Plan Book 160, Page 21, Barn-
stable Survey Consultants, Inc., 608 Main Street, West Yarmouth, MA",
which plan is recorded at the Barnstable County Registry of Deeds in
Plan Book 214, Page 95.

Said Lot 79 is conveyed subject to and together with the benefit of
all rights of way, easements, restrictions and taking of record insofar
as the same are now in force and applicable, including but not limited
to the following:

> Takings by the Town of Barnstable for the layout of Race Lane
> (Book 482, Page 146) and the layout of Willimantic Drive (Book
> 1198, Page 454, Easements to Cape & Vineyard Electric Company
> et al (Book 1187, Page 451), and Grantor's Easements and Rest-
> rictions (Book 1377, Page 944).

This mortgage is subject to a mortgage previously recorded on
December 7, 1984 in Book 4337 Page 287 at the Barnstable County
Registry of Deeds.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

BOOK 5084 PAGE 300

(7)  To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefits of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

BOOK 5084 PAGE 301

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at 358 N. Pleasant St., Amherst, Massachusetts 01002, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records which normally will be the same as the post office address shown above).

(23) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ___13th___

day of _____May_____, 19 86.

Signed, sealed, and delivered in the
presence of:

_____     _____ (SEAL)
                 (Witness)

_____     _____ (SEAL)
                 (Witness)

STATE OR COMMONWEALTH OF __MASSACHUSETTS__

COUNTY OF _____BARNSTABLE_____          ACKNOWLEDGMENT

On this __13th__ day of ____May____, 19 86 before me, the undersigned, a Notary Public in and

for said State or Commonwealth and County, personally appeared ___RONALD C. MENDES, JR. and___

_____DONNA M. GARCIA_____,

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires __01-05-90__

(NOTARIAL SEAL)                                    Notary Public

RECORDED MAY 19 86

EXHIBIT F

BOOK **6688** PAGE **333**    16762

N O T A B E BAUM               N O T
A N                            A N
O F F I C I A L    REAL ESTATE MORTGAGE    O F F I C I A L
75 Willington Avenue, Marstons Mills, MA C O P Y

RONALD C. MENDES, JR. and DONNA M. GARCIA, of Marstons Mills,
Barnstable County, MA, for consideration paid, grant to ABE BAUM
of 1445 Schorr Parkway #501 Brooklyn, NY 11214, with MORTGAGE
COVENANTS to secure the payment of THIRTY THOUSAND AND 00/100
($30,000.00) DOLLARS as provided in a Note of even date
(references herein to the Note mean and include the Note as same
may hereafter be modified, amended and extended).

Said mortgage is of land more particularly described in Exhibit
"A" attached hereto and incorporated herein by this reference.

*Exhibit "A"*

the land in Barnstable (Marstons Mills), Barnstable County, Mass-
achusetts, more particularly bounded and described as follows:

NORTHEASTERLY    by Willington Avenue, a private way, 130 feet;

SOUTHEASTERLY    by Lot 78, 160 feet;

SOUTHWESTERLY    by Lot 81, 130 feet; and

NORTHWESTERLY    by Lot 80, 160 feet.

Containing 20,800 square feet.

Said Lot is shown on the hereinafter mentioned plan as LOT 79.

All of said boundaries are shown on a plan entitled "Connecticut
Village in Marstons Mills, Barnstable, Mass. on Old Cape Cod over-
looking Shubael Pond, owned and developed by William F. Sledjeski,
Benjamin Buchberg, Joseph Coughlin and Adolphe Dugas, Scale 1" = 100',
Ed Kellogg, C.E. - Osterville, 1960" which plan is recorded at the
Barnstable County Registry of Deeds in Plan Book 157, Page 97.

Together with the right to use the ways shown on said plan in common
with others legally entitled thereto.

The above described premises are conveyed subject to an Easement in
favor of the Cape and Vineyard Electric Company, et al dated January
3, 1963 and being duly recorded in Barnstable County Registry of
Deeds, Book 1187, Page 451, and the easements and restrictions in
Book 1377, Page 944.
For grantors title see deed recorded with said Registry in Book 1398,
Page 427.

*See Book 4337 Page 285.*

*RCM Su*
*DM G*

BOOK 6688 PAGE 334

In the event Mortgagor shall fail to so comply with all of the terms, provisions and conditions of any prior mortgage so as to result in a default not cured within applicable grace periods as therein provided, such failure on the part of the Mortgagor shall constitute a default under this mortgage, and shall entitle Mortgagee, at his option, to exercise any and all rights and remedies given Mortgagee in the event of default hereunder.

Mortgagor and Mortgagee agree to send promptly to the other copies of any notice received by either of them from the Holder of any prior mortgage.

Mortgagor shall furnish to the Mortgagee promptly copies of all notices of default which the Holder of any prior mortgage gives to Mortgagor.

Anything contained herein to the contrary notwithstanding, Mortgagee shall have the right to cure any defaults in connection with said prior mortgage notwithstanding the fact that Mortgagor may then be in default in the performance of the terms, covenants and obligations of this mortgage.

To the extent that the Mortgagee makes payments to protect the lien of this mortgage, or makes payments to any prior lienors, such payments shall be protected by the lien of this mortgage and the Mortgagee shall be subrogated to the rights of such prior lienors. If the Mortgagor shall default in making any required payment of principal, interest and taxes under the terms of and within applicable grace periods provided in any prior mortgage, the Mortgagee shall have the right to advance the funds necessary to cure such default, and all funds so advanced by Mortgagee shall be credited against the next installments of interest and principal due under the Note secured by this mortgage.

In the event the title or ownership of or a beneficial interest in the within mortgaged premises or any part thereof is vested in a person other than the Mortgagor, then this mortgage and the note secured thereby shall be in default, and the unpaid balance of the note secured hereby shall become immediately due and payable at the option of the Mortgagee.

The Mortgagor agrees to comply with all covenants and conditions of any prior mortgage and this mortgage and notes secured thereby including specifically but without limiting the generality of the foregoing:

1.    To pay when due all taxes, charges, assessments and water rates to whomever levied or assessed, whether on the mortgaged premises or on any interest therein or on the debt or obligation secured hereby;

BOOK 6688 PAGE 335

2.  To keep the buildings and all structures, fixtures and
    appliances covered by this mortgage now or hereafter on
    the premises, insured against fire and such other
    casualties and contingencies as the Holder from time to
    time may reasonably require in a sum and in companies
    reasonably satisfactory to the Holder and to deposit
    all such policies with and made payable in case of loss
    to the Holder, hereby appointing the Holder attorney
    irrevocable, in case of breach hereof, if the Holder
    shall so elect, to cancel or transfer such insurance
    and to retain any premiums or proceeds and to apply the
    same to indebtedness secured hereby.

3.  To keep all buildings in good repair and tenantable
    condition, reasonable wear and tear excepted, and, if
    the premises covered hereby, or any part thereof, shall
    be damaged by fire or other hazard against which
    insurance is held as hereinbefore provided, the amounts
    paid by any insurance company pursuant to the contract
    or insurance shall, to the extent of the indebtedness
    then remaining unpaid, be paid to the Holder, and in
    the event the prior Mortgagees permit the proceeds to
    be utilized for restoration then subject to reasonable
    holdback to insure continuation of the value hereby
    given, then such proceeds shall be utilized for the
    repairing or rebuilding of the premises or applied to
    the satisfaction of the debt secured hereby at the
    election of the Holder; and if any law or ordinance
    requires or shall hereafter require the demolition of
    any portion of any building remaining on said premises
    after a partial loss by fire before the same may be
    rebuilt, to keep said Holder insured against loss by
    reason of such demolition, reasonable wear and tear and
    damage by fire only excepted, hereby granting to the
    Holder in the event of foreclosure full authority as
    attorney irrevocable of the Mortgagor to cancel such
    insurance and retain the return premiums thereof;

4.  Not to permit or suffer any strip or waste of the
    mortgaged premises, nor any violation of any law or
    ordinance affecting the same or the use thereof;

5.  That Mortgagor will perform and observe all the
    obligations imposed upon Mortgagor under any leases of
    the mortgaged premises and will not do or permit to be
    done anything to impair the security thereof and in the
    event of a default in this Mortgage, to assign to the
    Holder upon the demand of the Holder any and all leases
    of the Mortgaged Premises, and also the Mortgagor's
    rights under any subleases thereof and/or any and all
    rents and income from said leases or subleases, and for
    the purposes of making such assignments, leases or

RCH Sr
DmG

BOOK 6688 PAGE 336

subleases, and for the purposes of making such
assignments, the Mortgagor hereby grants the power and
authority to, and constitutes and appoints the Holder
or such persons, as the case may be, designated by him,
the attorney irrevocable of the Mortgagor to make such
assignments of then existing leases and agrees that
after such assignments the Holder may modify and
otherwise deal with all such subleases or leases with
the same power and discretion which said Holder would
have of it were the owner, and free from any restraint.

6.  The Mortgagor shall execute no lease providing for
payment of rent for more than two (2) months in advance
and shall not receive rent for over two (2) months in
advance without the express consent in writing by the
Holder;

7.  To pay to the Holder hereof on each interest and
principal or payment date hereof, a sum equal to
One-Twelfth (1/12) of the yearly real estate taxes and
betterments, if any, of the mortgaged premises as
estimated by the Holder hereof, unless such payments
are being made to a prior Mortgagee;

8.  To pay on demand to the Holder, or Holder may, at his
option, add to the principal balance then due, any sums
advanced or paid by the Holder on account of any
default of this or any prior mortgage of whatever
nature by the Mortgagor for taxes, repairs, insurance
or any sums paid by the Holder, including reasonable
attorney's fees in prosecuting, defending or
intervening in any legal or equitable preceding wherein
any of the rights created by the mortgage are in the
sole judgment of the Holder, jeopardized or issue; and
the Holder may apply to any of these purposes any sums
paid hereunder by the Mortgagor as interest or
otherwise;

9.  To remain liable upon the covenants herein and in any
other instruments and upon the note secured hereby
notwithstanding any forbearance, extension of other
indulgence given by the Holder to any future owner of
the mortgaged premises or other person, notice of any
such forbearance, extension or other indulgence being
hereby expressly waived.

THE MORTGAGOR HEREBY AUTHORIZES THE HOLDER:

1.  To pay all taxes, assessments and water rates, with
interest, costs and charges accruing thereon which may
at any time be or become a lien on the mortgaged
premises, or any part thereof;

BOOK 6688 PAGE 337

2. To pay the premiums for any insurance required hereunder in the event that Mortgagor does not pay said premiums;

3. To incur and pay reasonable expenses in protecting the rights hereunder and the security hereby granted;

4. In the event of default, to pay any balance due on any article of personal property or fixtures included in or now added to the mortgaged premises, and the Mortgagor hereby covenants to notify the Holder promptly of the existence of and the exact details of any conditional sales agreement, other security agreement or title retention agreement affecting the premises, any part thereof, any improvement thereon or personal property utilized in connection therewith, and shall at any time at the express request in writing of the Holder, assign to the Holder any and all right, title and interest that the Mortgagor may have in and to any and all such agreements, and the Mortgagor hereby grants the power and authority to and constitutes and appoints and Holder or such persons as may be designated by it the attorney irrevocable of the Mortgagor if the Holder shall so select to make such assignments;

5. To add all amounts paid under the foregoing provisions to the principal sum secured hereby and to apply to any of these purposes or to the payment of any amount so paid by the Holder, any sums paid hereunder by the Mortgagor as interest or otherwise.

THE MORTGAGOR HEREBY AGREES:

1. In case of default of any condition of this mortgage, the Holder may apply toward any indebtedness hereunder, any deposit or any sum credited by or due from the Holder to the Mortgagor without first enforcing any other rights of the Holder against the Mortgagor, against any endorser or guarantor of the mortgage note or against the mortgaged premises;

2. In case any default continuing uncured for thirty (30) days after written notice, in the condition of the mortgage or any prior mortgage on the mortgaged premises shall exist, the entire mortgage debt shall become due at the option of the Holder;

3. In case redemption is had by the Mortgagor after foreclosure proceedings have been begun, the Holder shall be entitled to collect all costs, charges and expenses, including reasonable attorney's fees,

BOOK 6688 PAGE 338

incurred up to the time of redemption;

4.   In the exercise of the power of sale hereof, if the
Holder elects to sell in parcels, the sales may be held
for time to time and the power shall not be exhausted
until all of the mortgaged premises not previously
released shall have been sold.

IN THE EVENT the ownership of the mortgaged premises or any
part thereof becomes vested in a person other than the Mortgagor,
the Holder may, without notice to the Mortgagor, deal with such
successor or successors in interest with reference to the
mortgage and the debt hereby secured, and in the same manner as
with the Mortgagor without in any way vitiating or discharging
the Mortgagor's liability hereunder or upon the debt hereby
secured.   No sale of the premises hereby mortgaged and no
forbearance on the part of the Holder and no extensions, whether
oral or written, of the time for payment of the debt hereby
secured, given by the Holder, shall operate to release, discharge
modify, change or affect the original liability of the Mortgagor
herein, either in whole or in part.

NO WAIVER of any default or other indulgence shall be
effective unless expressed in writing executed by the Holder
hereof.

THE WORD "Holder" as used herein shall be construed as
descriptive of the Mortgagee named herein and of any subsequent
Holder or Holders hereof; the word "Mortgagor" as used herein
shall be construed as descriptive of the Mortgagor named herein
and of any subsequent owner or owners of the equity of redemption
of the mortgaged premises; and all of the covenants and
agreements of the Mortgagor herein contained shall be binding
upon the heirs, administrators, executors, successors and assigns
of the Mortgagor; and if the context so requires the words
"Mortgagor" and "Holder" and the pronouns referring to them shall
be construed as plural, neuter, masculine or feminine.

THIS MORTGAGE and all the provisions hereof are to be
governed, construed and enforced by and according to the laws and
statute of the Commonwealth of Massachusetts.  In the event that
any provisions of this mortgage is illegal or unenforceable, then
the provisions shall be considered severable and shall not
invalidate the remainder of the mortgage.

THIS MORTGAGE is upon the STATUTORY CONDITION and upon the
further condition that all covenants and agreements on the part
of the Mortgagor herein contained shall be kept and fully
performed for any breach of which the Holder shall have the
STATUTORY POWER OF SALE.  It is also agreed that this mortgage is
security for the payment of the aforesaid obligations.

BOOK 6688 PAGE 339

Mortgagor, for said consideration, assigns to Mortgagee all rents, profits, or income derived from the mortgaged Premises. In the event of default, Mortgagee may collect such rents without the necessity of making a formal entry unto the mortgage premises. Prior to default, notwithstanding this Assignment, Mortgagor may continue to collect all such rents, profits, and income.

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

RCHSe
DmG

BOOK **6688** PAGE **340**

This Mortgage is to secure the payment of the above Note and sums and, in addition, any and all other indebtedness of the Mortgagor to the Mortgagee (or the Holder) whether now existing or hereafter created.

This Mortgage is upon the STATUTORY CONDITION for any breach of which the Mortgagee shall have the statutory power of sale.

WITNESS our hands and seals this 29th day of March, 1989.

_____
RONALD C. MENDES, JR.

_____
DONNA M. GARCIA

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                           March 29, 1989

   Then personally appeared the above named RONALD C. MENDES, JR. and DONNA M. GARCIA and acknowledged the execution of the foregoing instrument to be their free act and deed, before me,

_____
Stephen Laskin
Notary Public
My commission expires:
11/3/89

f/s/f:m
c/i/f:m(.v)
s/l/m:ci(.v)
r/m/m:wa(.v)

RCM Jr
DmG

RECORDED APR 5 89

EXHIBIT G

BOOK 8583 PAGE 176

N 28346

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

QUITCLAIM DEED

The **UNITED STATES OF AMERICA**, acting through the Administrator of the Farmers Home Administration, United States Department of Agriculture, **CONVEYS** and **QUITCLAIMS** to **JOHN A. MILDE** and **LINDA L. MILDE**, husband and wife, of 19 Marc Avenue, Centerville, Massachusetts, as tenants by the entirety, their heirs, executors, administrators and assigns forever Grantees,

for the sum of **SEVENTY THOUSAND AND NO/100 DOLLARS ($70,000.00)**

all interest in the following described real estate situated in the County of Barnstable, Commonwealth of Massachusetts, to wit:

The land in the Town of Barnstable, in the village of Marstons Mills, bounded and described as follows:

Northeasterly     by Willington Avenue, a private way, 130 feet,
Southeasterly     by Lot 78, 160 feet,
Southwesterly     by Lot 81, 130 feet, and
Northwesterly     by Lot 80, 160 feet.

Containing 20,800 square feet.
Said lot is shown on the hereinafter mentioned plan as <u>Lot 79</u>.

All of said boundaries as shown on a plan of land entitled "Briarwood Village, Subdivision of plan of land in Marstons Mills, Barnstable, MA, for Laskey Enterprises, Inc., Scale 1" = 80', dated August, 1967, being a subdivision of Lot 41A as shown on a plan recorded at the Barnstable County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey Consultants, Inc., 608 Main Street, West Yarmouth, MA", which plan is recorded at the Barnstable County Registry of Deeds in Plan Book 151, Page 97.

Said <u>Lot 79</u> is conveyed subject to and together with the benefit of all rights of way, easements, restrictions and taking of record insofar as the same are now in force and applicable, including but not limited to the following:

Takings by the Town of Barnstable for the layout of Race Lane (Book 482, Page 146) and the layout of Willimantic Drive (Book 1198, Page 454, Easements to Cape & Vineyard Electric Company et al (Book 1187, Page 451), and Grantor's Easements and Restrictions (Book 1377, Page 944).

Being the same premises acquired by the grantor herein by a foreclosure deed under power of sale contained in a first mortgage of Ronald C. Mendes, Jr. and Donna M. Garcia to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, dated December 7, 1984 and recorded in Book 4337, Page 287, and in a second mortgage dated May 13, 1986 and recorded in Book 5084, Page 298 in the Barnstable County Registry of Deeds, which foreclosure deed is dated June 1, 1992 and recorded in Book 8083, Page 223 at said Registry of Deeds.

75 Willington Avenue, Marstons Mills, Massachusetts

BOOK 8583 PAGE 177

In connection with the execution of this deed, a certain real estate mortgage is to be given and executed by John A. Milde and Linda L. Milde to the United States of America, to secure the purchase price of the above-described premises and which is intended to be recorded simultaneously herewith.

This deed is executed and delivered pursuant to the provisions of Standard Sales Contract dated December 4, 1992 and the authority set forth in 7 CFR 1900, Subpart A.

No member of Congress shall be admitted to any share or part of this deed or to any benefit that may arise therefrom.

Dated:  May 17, 1993

                    UNITED STATES OF AMERICA (Grantor)

                    By _____
                    THEODORE L. FUSARO, State Director
                    Farmers Home Administration
                    United States Department of Agriculture

In the presence of:

_____
Caroline E. Ryder

_____
Lynn Reagan

                    **ACKNOWLEDGMENT**

STATE OF MASSACHUSETTS )
                       ) ss:  Amherst
COUNTY OF HAMPSHIRE    )


     I, the undersigned Notary Public in and for said State and County, do hereby certify that on this 17th day of May, 1993, before me personally appeared **Theodore L. Fusaro**, personally known to me and to me personally known to be the person and officer of the **Farmers Home Administration** of the **United States Department of Agriculture** described in and who executed the foregoing instrument; and being by me duly sworn (or affirmed), and being informed of the contents of said instrument, he acknowledged to me that as his free act and deed he executed said instrument in the capacity therein stated and for the purposes and consideration therein contained.

     **IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

                    _____
                    **MADELINE L. BROADHURST**
                    **Notary Public**

My commission expires November 4, 1999.              RECORDED MAY 20 93

EXHIBIT H

*Position 5*

**USDA-FmHA**
Form FmHA 427-1 MA
(Rev. 6-89)

BOOK **8583** PAGE **178**

**28247**

**REAL ESTATE MORTGAGE DEED FOR MASSACHUSETTS**

N O T
A N
O F F I C I A L
C O P Y

THIS MORTGAGE is made and entered into by  John A. Milde and Linda L. Milde

residing in _____ Barnstable _____ County, State of _____ Massachusetts _____

whose post office address is _____ 75 Wilfington Avenue, Marstons Mills, MA  02648 _____, in said State,
herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration,
United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s)
or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been ex-
ecuted by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the
option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 5-19-93 | $70,000.00 | 7.25% | 5-13-2031 |
| 5-19-93 | $20,000.00 | 7.25% | 5-13-2031 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument
may be increased as provided in Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure payment
thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other
statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the
Government, or in the event the Government should assign this instrument without insurance of the note, this instrument
shall secure payment of the note: but when the note is held by an insured holder, this instrument shall not secure payment
of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage
to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower
by the Government pursuant to 42 U.S.C. §1490a, or any amounts due under any Shared Appreciation Agreement/Re-
capture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government,
or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt
payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision
for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure perfor-
mance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance
endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all
advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every
covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does
hereby grant, convey, mortgage, assign and forever warrant unto the Government the following property situated in

_____ Barnstable _____ County(ies), State of _____ Massachusetts _____.

For Property Description see Exhibit "A" annexed hereto.

FmHA 427-1 MA (Rev. 6-89)

Mortgagee's Address: Farmers Home Administration, 4 Barlows Landing Road, Pocasset, MA  02559

BOOK 8583 PAGE **179**

NOT                    NOT
AN                     AN
OFFICIAL    Exhibit "A"   OFFICIAL
COPY                   COPY

NOT                    NOT
The land in the Town of Barnstable, in the village of Marstons Mills,
bounded and described as follows: A L    OFFICIAL
COPY                   COPY

| Northeasterly | by Willington Avenue, a private way, 130 feet, |
| Southeasterly | by Lot 78, 160 feet, |
| Southwesterly | by Lot 81, 130 feet, and |
| Northwesterly | by Lot 80, 160 feet. |

Containing 20,800 square feet.
Said lot is shown on the hereinafter mentioned plan as <u>Lot 79</u>.

All of said boundaries as shown on a plan of land entitled "Briarwood
Village, Subdivision of plan of land in Marstons Mills, Barnstable, MA,
for Laskey Enterprises, Inc., Scale 1" = 80', dated August, 1967, being a
subdivision of Lot 41A as shown on a plan recorded at the Barnstable
County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey
Consultants, Inc., 608 Main Street, West Yarmouth, MA", which plan is
recorded at the Barnstable County Registry of Deeds in Plan Book 151,
Page 97.

Said <u>Lot 79</u> is conveyed subject to and together with the benefit of all
rights of way, easements, restrictions and taking of record insofar as the
same are now in force and applicable

For title reference see deed of the United States of America to us dated May 17, 1993
and recorded herewith.

THIS IS A PURCHASE MONEY MORTGAGE

BOOK 8583 PAGE 180

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

together with all rights (including the rights to mining products, gravel, oil, gas, coal or otherwise minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property":

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)   To comply with all laws, ordinances, and regulations affecting the property.

BOOK 8583 PAGE 181

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as provided in the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefits of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at 451 West St., Amherst, Massachusetts 01002, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____ 19th _____

day of _____ May _____ , 19 93

Signed, sealed, and delivered in the presence of:

_____        _____ (SEAL)
Arthur H. Rapoza        (Witness)        John A. Milde

_____        _____ (SEAL)
        (Witness)        Linda L. Milde

STATE OR COMMONWEALTH OF Massachusetts

                                        **ACKNOWLEDGMENT**

COUNTY OF _____ Barnstable _____

On this _____ 19th _____ day of _____ May _____ , 19 93, before me, the undersigned, a Notary Public in and

for said State or Commonwealth and County, personally appeared _____ John A. Milde and Linda L. Milde _____

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires _____ August 23, 1996 _____    _____ Notary Public
                                        Arthur H. Rapoza

(NOTARIAL SEAL)

RECORDED MAY 20 93

EXHIBIT H.1

**COMMONWEALTH OF MASSACHUSETTS**

(SEAL)

**LAND COURT**

**DEPARTMENT OF THE TRIAL COURT**

To

NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY

Bk B10377-126   50821

Case No. J30711

John A. Milde and Linda L. Milde

NOT AN OFFICIAL COPY

09-06-1996 @ 01:10

NOT AN OFFICIAL COPY

and to all persons entitled to the benefit of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended:

United States of America, acting through Rural Development, United States Department of Agriculture, a successor to the Farmers Home Administration

claiming to be the holder of a mortgage covering real property in Marston Mills (Barnstable) numbered 75 Willington Avenue

given by John A. Milde and Linda L. Milde to United States of America, acting through the Farmers Home Administration, United States Department of Agriculture dated May 19, 1993 recorded at Barnstable County Registry of Deeds at Book 8583 Page 178

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following: by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before the 23rd day of **September** 19 96, or you may be forever barred from claiming that such foreclosure is invalid under said act.   PETER W. KILBORN

Witness, ~~MARILYN M. SULLIVAN~~, Chief Justice of said Court this 8th day of **August** 19 96.

Charles W. Trombly Jr.
Recorder

A TRUE COPY
ATTEST:

Charles W. Trombly, Jr.
RECORDER

LCO-5 (9/89)

ROBERT H. GREENE, P.C.
130 Liberty Street
Unit 13A
Brockton, MA 02401

**BARNSTABLE REGISTRY OF DEEDS**

EXHIBIT H.2

BK:10475-056   64041
11-08-1996 @ 09:57

COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT

*Oct. 7, 1996*

*Let Judgment Issue*
*Peter W. Kilborn*
*Chief Justice*
*230711*

SUFFOLK        OFFICIAL        Case No.
COMPLAINT TO FORECLOSE MORTGAGE

PLAINTIFF:
Name
United States of America, acting
through Rural Development,
United States Department
of Agriculture, a successor
to the Farmers Home
Administration

96 AUG -7 PM 12:52

City or Town
of Residence

Amherst, MA

| DEFENDANT:<br>Name | City or Town<br>of Residence | Interest |
|---|---|---|
| John A. Milde | Barnstable, MA | Owner |
| Linda L. Milde | Barnstable, MA | Owner |

1.  Your plaintiff is the owner (or assignee) and holder of a mortgage with the statutory power of sale given by ___John A. Milde and Linda L. Milde___

to ___United States of America, acting through the Farmers Home Administration, United States Department of Agriculture___ dated ___May 19, 1993___

recorded at ___Barnstable County Registry of Deeds___ Book ___8583___ Page ___178___

covering* ___75 Willington Avenue, Marston Mills (Barnstable)___

_____
(street and number)
(and city or town)

and more particularly described in said mortgage.

LAND COURT USE ONLY

JUDGMENT

Under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, this cause came on to be heard and thereupon, upon consideration thereof, it appearing to the Court that the record owner is not entitled to the benefits of said Act, it is
    ORDERED and ADJUDGED that the plaintiff be authorized and empowered to make an entry and to sell the property covered by the mortgage as set forth in this complaint in accordance with the powers contained in said mortgage.

By the Court.
Attest:

A TRUE COPY
ATTEST:

*Jeanne M. Maloney*

(SEAL)

Jeanne M. Maloney
Deputy Recorder

NOTE:  Wherever the singular is used herein, it shall be
       deemed to mean and include the plural where applicable.
       *A metes and bounds description of the property is not necessary.

ROBERT H. GREENE, P.C.
130 Liberty Street
Unit 13A
Brockton, MA 02401

BARNSTABLE REGISTRY OF DEEDS

BK:10475-059   64043
11-08-1996 @ 09:57

EXHIBIT H.3

## CERTIFICATE OF ENTRY

We hereby certify that on the 17th day of October in the year 1996 we were present and saw ROBERT H. GREENE of Brockton, Massachusetts, the attorney in fact appointed by the United States of America, Acting Through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration pursuant to Power of Attorney dated September 20, 1996, holder of a mortgage from:

JOHN A. MILDE and LINDA L. MILDE

to: UNITED STATES OF AMERICA, ACTING THROUGH THE FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE

dated: May 19, 1993

and recorded at the Barnstable County Registry of Deeds at Book 8583 Page 178

make an open, peaceable, and unopposed entry on the premises as described in said mortgage, for the purpose, by him declared, of foreclosing said mortgage for breach of condition thereof.

_____   _280 Great Rd   Shirley  o/46?_
Witness  Stanley M^c Niff   Address

_____   _280 Great Road, Shirley, MA 01469_
Witness  VIRGINIA McNIFF   Address

### COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE , SS.

Then personally appeared the above named Stanley McNiff and Virginia McNiff and made oath that the above certificate by them subscribed is true and correct in each and every particular, before me on this 17th day of October, 1996

_____
Notary Public ( Stephen E Dean )
My commission expires: 4/28/00

ROBERT H. GREENE, P.C.
130 Liberty Street
Unit 13A
Brockton, MA 02401

BARNSTABLE REGISTRY OF DEEDS

_(handwritten left margin: 15 Willington Ave, Marston Mills, MA.)_

Bk:10475-060    64044

EXHIBIT H.4                    **FORECLOSURE DEED**

11-08-1996 @ 09:57

THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, having a usual place of business at 451 West Street, Amherst MA 01002

holder of a mortgage given by:

JOHN A. MILDE and LINDA L. MILDE

to: UNITED STATES OF AMERICA, ACTING THROUGH THE FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE

dated: May 19, 1993

and recorded at Book 8583 Page 178 at the Barnstable County Registry of Deeds

by virtue of the power conferred by said mortgage and every other power, in consideration of: seventy-two thousand two hundred fifty ($72,250.00) dollars, said amount bid by:

THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration,

hereby grants to:

THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, having a usual place of business at 451 West Street, Amherst MA 01002

the premises conveyed by said mortgage.

IN WITNESS WHEREOF, the said THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, has caused its seal to be hereto affixed and these presents to be signed and acknowledged by its State Director, thereunto duly authorized, the __25__ day of __October__, 1996.

UNITED STATES OF AMERICA,
Acting through Rural Development,
United States Department of
Agriculture, a Successor to
the Farmers Home Administration

By: WILLIAM H. BRADLEY,
State Director

ROBERT H. GREENE, P.C.
130 Liberty Street
Unit 13A
Brockton, MA 02401

Bk:10475-061    64044

## COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.   N O T                          OCTOBER  25  , 1996

Then personally appeard before me the above-named WILLIAM H.
BRADLEY, the State Director of the THE UNITED STATES OF AMERICA,
acting through Rural Development, United States Department of
Agriculture, a Successor to the Farmers Home Administration, who
acknowledged the foregoing to be given as the free act and deed
of said government and agency thereof.

O F F I C I A L        Madeline LI Broadhurst
C O P Y                NOTARY PUBLIC (                    )
                       My Commission Expires: 11/4/99

PROPERTY ADDRESS: 75 Willington Avenue, Marston Mills (Barnsta-
ble), MA

Bk :10475-062   64044.

## MORTGAGEE'S AFFIDAVIT

I, WILLIAM H. BRADLEY, the State Director of THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, the grantor in the foregoing deed, make oath and say that the principal and interest or other obligation mentioned in the mortgage referred to therein were not paid or tendered or performed when due or prior to the sale and that THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, the holder of said mortgage published on September 18, 1996, September 25, 1996 and October 2, 1996 in  the Cape Cod Times, a newspaper published or by its title page purporting to be published in the Town of Barnstable, Massachusetts, and the Cape Cod Times having a general circulation in the Town of Barnstable, Massachusetts,

A NOTICE OF WHICH A TRUE COPY IS ATTACHED HERETO AS EXHIBIT "A".

The holder of said mortgage also complied with Massachusetts General Laws Chapter 244 Section 14, as amended, by mailing the required notice or notices by certified mail, return receipt requested.

Pursuant to said notice at the time, date and place therein appointed, to wit: Thursday, October 17, 1996 at 1:00 P.M., the holder of the mortgage sold the mortgaged premises at public auction by Stephen Dean of Dean Associates, a duly licensed auctioneer, Massachusetts License No. 124, to:

THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, of 451 West Street, Amherst MA 01002,

the grantee in said Mortgagee's Deed, the high bidder pursuant to the terms of said auction, for the consideration therein recited, to wit: seventy-two thousand two hundred fifty ($72,250.00) dollars, bid by said THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration.

WILLIAM H. BRADLEY, AFFIANT

**ROBERT H. GREENE, P.C.**
130 Liberty Street
Unit 13A
Brockton, MA 02401

Bk:10475-063   64044

COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.

Then personally appeard before me the above-named WILLIAM H. BRADLEY, the State Director of the THE UNITED STATES OF AMERICA, acting through Rural Development, United States Department of Agriculture, a Successor to the Farmers Home Administration, who made oath that the foregoing is true and correct in each and every particular on this 25 day of October , 1996.

NOT AN OFFICIAL COPY   NOT AN OFFICIAL

Madeline L. Broadhurst
_____
Madeline L. Broadhurst
NOTARY PUBLIC (                    )
My Commission Expires: 11/4/99

Exhibit "A" BK:10475-064   64044

## MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by JOHN A. MILDE and LINDA L. MILDE to UNITED STATES OF AMERICA, ACTING THROUGH THE FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE dated May 19, 1993 recorded at the Barnstable County Registry of Deeds at Book 8565 Page 178, of which mortgage the undersigned is the holder, for breach of the conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises reportedly located at 75 Willington Avenue, Marstons Mills, Barnstable County, Massachusetts will be sold at public auction at 1:00 o'clock p.m. on Thursday, the 17th day of October, 1996, upon the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

The land in the Town of Barnstable, in the village of Marstons Mills, bounded and described as follows:

Northeasterly by Willington Avenue, a private way, 130 feet;

Southeasterly by Lot 78, 160 feet;

Southwesterly by Lot 81, 130 feet; and

Northwesterly by Lot 80, 160 feet.

Containing 20,800 square feet.

Said lot is shown on the hereinafter mentioned plan as Lot 79.

All of said boundaries as shown on a plan of land entitled "Briarwood Village, Subdivision of plan of land in Marstons Mills, Barnstable, MA, for Laskey Enterprises, Inc.," dated August, 1967, being a subdivision of Lot 41A as shown on a plan recorded at the Barnstable County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey Consultants, Inc., 608 Main Street, West Yarmouth, MA", which plan is recorded at Barnstable County Registry of Deeds in Plan Book 151, Page 97.

Said Lot 79 is conveyed subject to and together with the benefit of all rights of way, easements, restrictions and taking of record insofar as the same are now in force and applicable.

For title reference see deed of the United States of America to us dated May 17, 1993 and recorded herewith.

THIS IS A PURCHASE MONEY MORTGAGE.

Said premises are conveyed subject to and with benefit of easements and restrictions of record, if any, insofar as the same may be in force and applicable.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens/or other enforceable encombrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the sale: cash or certified check in the sum of $5,000.00 as the deposit must be shown at the time and place of the sale in order to qualify as a bidder; high bidder to sign written Memorandum of Terms and Conditions of Sale upon acceptance of the bid; balance of purchase price payable in cash or current funds in thirty (30) days from the date of the sale at the office of mortgagee's attorney, Robert H. Greene, P.C., 130 Liberty Street, Unit 13A, Brockton, Massachusetts 02401 or such other time as may be designated by the mortgagee. Upon tender of payment of the balance of the purchase price, the mortgagee will thereupon deliver the Mortgagee's Deed to the purchaser.

Other terms to be announced at the sale.

The Post Office address of the mortgaged property to be sold is reportedly 75 Willington Avenue, Marstons Mills, Massachusetts.

UNITED STATES OF AMERICA, ACTING THROUGH RURAL DEVELOPMENT, UNITED STATES DEPARTMENT OF AGRICULTURE, A SUCCESSOR TO THE FARMERS HOME ADMINISTRATION, PRESENT HOLDER OF SAID MORTGAGE, by its attorney
ROBERT H. GREENE, ESQ.
ROBERT H. GREENE, P.C.
130 Liberty Street,
Unit 13A
Brockton, MA 02401
508-588-7729
DATED: SEPTEMBER 11, 1996
9/18, 9/25, 10/2/96

N O T   A N   O F F I C I A L   C O P Y

**BARNSTABLE REGISTRY OF DEEDS**

EXHIBIT I

Bk:10985-080   56792
10-01-1997 @ 02:44

UNITED STATES DEPARTMENT OF AGRICULTURE
**RURAL DEVELOPMENT**

QUITCLAIM DEED

The **UNITED STATES OF AMERICA**, acting through the Administrator of the Rural Housing Service, (formerly Farmers Home Administration) United States Department of Agriculture, **CONVEYS** and **QUITCLAIMS** to **Theresa M. Paron**, of 64 Weir Road, Yarmouth Port, Massachusetts as a Individual, her heirs, executors, administrators and assigns forever, Grantees, for the sum of

**EIGHTY FIVE THOUSAND AND NO/100 DOLLARS ($85,000.00)**

all interest in the following described real estate situated in the County of Barnstable, Commonwealth of Massachusetts, to wit:

The land in the Town of Barnstable, in the Village of Marstons Mills, bounded and described as follows:

| Northeasterly | by Willington Avenue, a private way, 130 feet, |
|---|---|
| Southeasterly | by Lot 78, 160 feet, |
| Southwesterly | by Lot 81, 130 feet, and |
| Northwesterly | by Lot 80, 160 feet. |

Containing 20,800 square feet.
Said lot is shown on the hereinafter mentioned plan as Lot 79.

All of said boundaries as shown on a plan of land entitled "Briarwood Village, Subdivision of plan of land in Marstons Mills, Barnstable, MA, for Laskey Enterprises, Inc., Scale 1" = 80', dated August 1967, being a subdivision of Lot 41A as shown on a plan recorded at the Barnstable County Registry of Deeds in Plan Book 160, Page 21, Barnstable Survey Consultants, Inc. 608 Main Street, West Yarmouth, MA", which plan is recorded at the Barnstable County Registry of Deeds in Plan Book 151, Page 97.

Said Lot 79 is conveyed subject to and together with the benefit of all rights of way, easements, restrictions and taking of record insofar as the same are now in force and applicable.

Being the same premises acquired by the grantor herein by a foreclosure deed under power of sale contained in the mortgage of John A. Milde and Linda L. Milde to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, dated May 19, 1993 and recorded May 20, 1993, in Book 8583, Page 178, at the Barnstable Registry of Deeds, which Foreclosure Deed was recorded on November 8, 1996, in Book 10475, Page 60, at said Registry of Deeds.

In connection with the execution of this deed, a certain real estate mortgage is to be given and executed by Theresa M. Paron, to the United States of America to secure the purchase price of the above-described premises and which is intended to be recorded simultaneously herewith.

Property address:   75 Willington Avenue, Marstons Mills, MA 02648

BK:10985-081    56792

This Deed is executed and delivered pursuant to the provisions of Standard Sales Contract dated April 30, 1997, and the authority set forth in 7 CFR 1900, Subpart A.

No member of Congress shall be admitted to any share or part of this deed or to any benefit that may arise therefrom.

N O T   A N   O F F I C I A L   C O P Y

Dated: September 11, 1997

UNITED STATES OF AMERICA (Grantor)

By _____

WILLIAM C. GOUZOUNIS, ACTING STATE DIRECTOR
USDA, Rural Development,
[successor in interest to the Farmers Home
 Administration]
State of Massachusetts
United States Department of Agriculture

In the presence of:

Lynn Reagan

Wendy M. Miller

Bk: 10985-082   56792

**ACKNOWLEDGMENT**

STATE OF MASSACHUSETTS )
                       ) ss:  Amherst
COUNTY OF HAMPSHIRE     )

    I, the undersigned Notary Public in and for said State and County, do hereby certify that on this 11th day of September, 1997, before me personally appeared **William C. Gouzounis**, personally known to me and to me personally known to be the person and office of **Rural Development of the United States Department of Agriculture** described in and who executed the foregoing instrument; and being by me duly sworn (or affirmed), and being informed of the contents of said instrument, he acknowledged to me that as his free act and deed he executed said instrument in the capacity therein stated and for the purposes and consideration therein contained.

    **IN WITNESS WHEREOF,**   I hereunto set my hand and official seal.

*Madeline L. Broadhurst*

**MADELINE L. BROADHURST**

My commission expires November 4, 1999.

**BARNSTABLE REGISTRY OF DEEDS**

EXHIBIT J

**Bk 19517 Pg333   #8864**

After Recording Return To:

    NOT
    02-09-2005 a 03:19p

NOT
AN
OFFICIAL
COPY

After recording, return
recording information to:
**American Title Inc.**
P.O. Box 390190
Omaha, NE 68139
A005010 50705

NOT
AN
OFFICIAL
COPY

Mail Tax Forms To:
Theresa & Michael Santos
75 Willington Ave,
Barnstable Township, MA 02648
Tax Parcel ID #:  Map 103; Parcel: 41

# QUITCLAIM DEED

For and in consideration of Ten Dollars, I, THERESA M. PARON n/k/a THERESA M. SANTOS, a now married woman who acquired title as a single woman, of 75 Willington Ave, Barnstable Township, MA 02648, Grantor; Grants to MICHAEL J. SANTOS and THERESA M. SANTOS, husband and wife, of 75 Willington Ave, Barnstable Township, MA 02648, Grantees; with quitclaim covenants:

*Locus*

THE FOLLOWING DESCRIBED REAL ESTATE SITUATED IN THE COUNTY OF BARNSTABLE, COMMONWEALTH OF MASSACHUSETTS, TO-WIT:

THE LAND IN THE TOWN OF BARNSTABLE, IN THE VILLAGE OF MARSTONS MILLS, BOUNDED AND DESCRIBED AS FOLLOWS:

NORTHEASTERLY BY WILLINGTON AVENUE, A PRIVATE WAY, 130 FEET, SOUTHEASTERLY BY LOT 78, 160 FEET, SOUTHWESTERLY BY LOT 81, 130 FEET, AND NORTHWESTERLY BY LOT 80, 160 FEET.

CONTAINING 20,800 SQUARE FEET. SAID LOT IS SHOWN ON THE HEREINAFTER MENTIONED PLAN AS LOT 79.

BEING THE SAME PREMISES ACQUIRED BY THE GRANTOR HEREIN BY A FORECLOSURE DEED UNDER POWER OF SALE CONTAINED IN THE MORTGAGE OF JOHN A. MILDE AND LINDA L. MILDE TO THE UNITED STATES OF AMERICA, ACTING THROUGH THE FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE, DATED MAY 19, 1993 AND RECORDED MAY 20, 1993, IN BOOK 8583, PAGE 178, AT THE BARNSTABLE REGISTRY OF DEEDS, WHICH FORECLOSURE

Bk 19517 Pg 334 #8864

DEED WAS RECORDED ON NOVEMBER 8, 1996, IN BOOK 10475, PAGE 60, AT SAID REGISTRY OF DEEDS. SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENTS, COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY.

AN OFFICIAL OFFICIAL COPY NOT AN NOT AN COPY

WITNESS my hand and seal this 21ST day of January, 2004 5

_William C. Sheehy_
WITNESS

_Theresa M. Santos_   f/k/a
_Theresa M. Paron_
**THERESA M. SANTOS f/k/a**
**THERESA M. PARON**

_____
WITNESS

## THE COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE _____ County         Dated JANUARY 21, 2004 5

ON THIS ___21ST___ day of ___JANUARY___, 2004 5 before me, the undersigned notary public, personally appeared THERESA M. SANTOS f/k/a THERESA M. PARON, proved to me through satisfactory evidence of identification, which were driver's licenses, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.

WILLIAM C. SHEEHY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 11, 2011

_William C. Sheehy_
Notary Public
My commission expires

No title search was performed on the subject property by the preparer. The preparer of this deed makes no representation as to the status of the title nor property use or any zoning regulations concerning described property herein conveyed nor any matter except the validity of the form of this instrument. Information herein was provided to preparer by Grantor/Grantee and /or their agents, no boundary survey was made at the time of this conveyance.

**Prepared by**
William E. Curphey & Associates, P.C.
2605 Enterprise Road, Suite 155
Clearwater, Florida 33759

BARNSTABLE REGISTRY OF DEEDS

Bk 34506 Pg147 #62879
09-27-2021 @ 08:20a

'EXHIBIT K '

After Recording Return To: N O T                    N O T
CITIZENS BANK              A N                       A N
ATTN: CONSUMER LOAN  F I C I A L        O F F I C I A L
OPERATIONS                C O P Y                    C O P Y
ONE CITIZENS BANK WAY,
JCB216
JOHNSTON, RI 02919    N O T                  N O T
                          A N                       A N
         O F F I C I A L        O F F I C I A L
Mortgage Loan Originator: C O P Y             C O P Y
CITIZENS BANK NA
1 CITIZENS PLAZA
PROVIDENCE RI 02903
License #:

Property Address: **75 WILLINGTON AVE, MARSTONS MILLS, MA 02648**

---

[Space Above This Line For Recording Data]

## MORTGAGE
(Line of Credit)

*60/9775—DB*

SANTOS
Loan #: 1001175783
PIN:

THIS MORTGAGE, dated **SEPTEMBER 3, 2021**, is between **THERESA M SANTOS AND MICHAEL J SANTOS**; residing at **75 WILLINGTON AVE, BARNSTABLE, MA 02648** US, the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we" or "us" and **CITIZENS BANK, N.A.**, with an address at **ONE CITIZENS PLAZA, PROVIDENCE, RI 02903** and hereinafter referred to as "you" or the "Mortgagee."

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to you, with mortgage covenants and with power of sale, the Premises located at: **75 WILLINGTON AVE, MARSTONS MILLS, MA 02648** (the "Premises") and further described as:
**SEE ATTACHED EXHIBIT A**
The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments,

**HELOC - MA Mortgage**
EX 1332.43                                    Page 1 of 6

013321001175783

N O T          N O T          1001175783
A N           A N
and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and
remainders with respect thereto.   C O P Y          C O P Y

LOAN: The Mortgage will secure your loan in the principal amount of **$50,000.00** or so much thereof as may be advanced and readvanced from time to time to **THERESA M SANTOS** and **MICHAEL J SANTOS** the Borrower(s) under the Home Equity Line of Credit Agreement and Disclosure Statement (the "Agreement") dated **SEPTEMBER 3, 2021**, plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Agreement, which has a maturity date of **SEPTEMBER 9, 2046**. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Agreement, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Agreement, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." The Agreement documents an open-end credit plan as defined in General Laws chapter 140D section 1, pursuant to which loans may be made, repaid and remade from time to time.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

MORTGAGOR'S IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Agreement because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce

**HELOC - MA Mortgage**
1332.43                    Page 2 of 6

1001175783

the amount owing on the Agreement.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any mortgages that have priority to this Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Agreement, on which you will charge interest at the interest rate set forth in the Agreement. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Agreement. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Agreement plus the amount of any mortgages that have priority to this Mortgage.

(g) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(h) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(i) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Agreement and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Agreement and this Mortgage without losing your rights in the Premises.

HELOC - MA Mortgage
1332.43

Page 3 of 6



013321001175783

N O T        N O T      1001175783
A N        A N

REMOVAL OF IMPROVEMENTS: We shall not demolish or remove any improvements from the Premises without your prior written consent. As a condition to the removal of any improvements, you may require us to make arrangements satisfactory to you to replace such improvements with improvements of at least equal value.

COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS: We shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Premises. We may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as we have notified you in writing prior to doing so and so long as, in your sole opinion, your interest in the Premises are not jeopardized. You may require us to post adequate security or a surety bond, reasonably satisfactory to you, to protect your interest.

DUTY TO PROTECT: We agree to neither abandon nor leave unattended the Premises. We shall do all other acts set forth above in this section, which from the character and use of the Premises are reasonably necessary to protect and preserve the Premises.

COMPLIANCE WITH LAWS: We warrant that the Premises and our use of the Premises complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

SURVIVAL OF PROMISES: All promises, agreements and statements we have made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as the Agreement is paid in full.

DEFAULT: Except as may be prohibited by applicable law, and subject to any notice required by applicable law, if we default on any term in the Agreement and/or of any term of this Mortgage, you may, in accordance with applicable law, pursue and enforce any rights you have under applicable law, including, without limitation, the right to: (i) accelerate all amounts due under the Agreement; (ii) foreclose upon this Mortgage and sell the Premises, either in whole or in part or in separate parcels at different times, if necessary, until the indebtedness due under the Agreement is satisfied or the Premises is exhausted, whichever occurs first; (iii) enter on and take possession of the Premises; (iv) collect the rental payments, including over-due rental payments, directly from tenants, and you are appointed as our agent and attorney-in-fact to collect any such rents by any appropriate proceeding; (v) manage the Premises, including signing, canceling and changing leases; and (vi) seek appointment of a receiver for the Premises and we hereby appoint you as our attorney-in-fact with authority to consent for us to the appointment of a receiver. This means that, among other rights you may pursue and enforce, you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe under the Agreement and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. We agree that the interest rate set forth in the Agreement will continue before and after a default, entry of a judgment and foreclosure. Subject to applicable law, if you acquire the Premises at a forced sale following our default, our right to any insurance proceeds resulting from damage to the Premises prior to the acquisition shall pass to you to the extent of the sums secured by this Mortgage immediately prior to acquisition. In addition, subject to applicable law, you shall be entitled to collect all reasonable fees and costs actually incurred by you or your agents arising out of or related to this Mortgage or the Agreement, including, but not limited to, reasonable attorneys' fees and costs of foreclosure, property preservation, documentary evidence, abstracts and title reports.

**HELOC - MA Mortgage**
ⓘ 1332.43                  Page 4 of 6



013321001175783

NOT        NOT       1001175783

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Agreement has been paid in full and your obligation to make further advances under the Agreement has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Agreement and this Mortgage, and provided any obligation to make further advances under the Agreement has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at **CITIZENS BANK, N.A., RJE310, 1 CITIZENS DRIVE, RIVERSIDE, RI 02915** or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Agreement has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

THIS MORTGAGE has been signed by each of us under seal on the date first above written.



—  MORTGAGOR  —  THERESA  M  SANTOS  —  DATE  —

—  MORTGAGOR  —  MICHAEL  J  SANTOS  —  DATE  —

**HELOC - MA Mortgage**
1332.43                         Page 5 of 6

013321001175783

Bk 34506 Pg152 #62879

N O T
A N
O F F I C I A L

N O T
A N
O F F I C I A L
C O P Y

1001175783

STATE OF _____Massachusetts_____

COUNTY OF _____Barnstable_____

On this __3__ day of __September 2021__, before me, the undersigned notary public, **THERESA M SANTOS AND MICHAEL J SANTOS** ; , personally appeared, proved to me through satisfactory evidence of identification which were _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

_____
Notary Public

My Commission Expires: __Aug 7, 2026__





CHRISTINA L. O'SULLIVAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires Aug. 7, 2026

HELOC - MA Mortgage
1332.43

Page 6 of 6

013321001175783

Bk 34506 Pg153 #62879

N O T                    N O T
A N                      A N
O F F I C I A L          O F F I C I A L
C O P Y                  C O P Y

**EXHIBIT A**

N O T                    N O T

THE LAND IN THE TOWN OF BARNSTABLE, IN THE VILLAGE OF
MARSTONS MILLS, COUNTY OF BARNSTABLE AND COMMONWEALTH
OF MASSACHUSETTS, BOUNDED AND DESCRIBED AS FOLLOWS:

NORTHEASTERLY BY WILLINGTON AVENUE, A PRIVATE WAY, 130
FEET, SOUTHEASTERLY BY LOT 78, 160 FEET, SOUTHWESTERLY BY
LOT 81, 130 FEET, AND NORTHWESTERLY BY LOT 80, 160 FEET.

CONTAINING 20,800 SQUARE FEET. SAID LOT IS SHOWN ON THE
HEREINAFTER MENTIONED PLAN AS LOT 79.

THIS BEING THE SAME PROPERTY CONVEYED TO MICHAEL J. SANTOS
AND THERESA M. SANTOS, HUSBAND AND WIFE, BY DEED FROM
THERESA M. PARON N/K/A THERESA M. SANTOS, A NOW MARRIED
WOMAN WHO ACQUIRED TITLE AS A SINGLE WOMAN, DATED
01/21/2005 AND RECORDED ON 02/09/2005 IN BOOK 19517, PAGE 333, IN
THE BARNSTABLE COUNTY RECORDERS OFFICE.

PARCEL NO. 103_041

Accurate Nbr: 6019775
Address : 75 WILLINGTON AVE, BARNSTABLE, MA

| Property Location | 75 WILLINGTON AVENUE | Map ID 35-001 41/ | Bldg Name | | State Use 1010 |
|---|---|---|---|---|---|
| Vision ID 5977 | Account # | | Bldg # 1 | Sec # 1 of 1   Card # 1 of 1 | Print Date 11/11/2021 10:57:31 A |

## CURRENT OWNER

SANTOS, MICHAEL J & THERESA M

75 WILLINGTON AVENUE

MARSTONS MIL   MA   02648

| TOPO | UTILITIES | STRT / ROAD | LOCATION |
|---|---|---|---|
| 1 Level | 2 Public Water | 1 Paved | |
| | 4 Gas | | |
| | 6 Septic | | |

### CURRENT ASSESSMENT

| Description | Code | Assessed | Assessed |
|---|---|---|---|
| RESIDNTL | 1010 | 231,100 | 231,100 |
| RES LAND | 1010 | 126,500 | 126,500 |
| | | | |
| Total | | 357,600 | 357,600 |

**801**

FY2022
BARNSTABLE, MA

# VISION

### SUPPLEMENTAL DATA

| | | | |
|---|---|---|---|
| Alt Prcl ID | | Plan Ref. | 157/97 |
| Split Zonin | | Land Ct# | |
| BID Parcel | | #SR | |
| ResExpt Q | YES: | Life Estate | |
| #DL 1 | LOT 79 | PP Acct | |
| #DL 2 | | | |
| GIS ID | F_956756_2709563 | Assoc Pid# | |

### RECORD OF OWNERSHIP

| | BK-VOL/PAGE | SALE DATE | Q/U | V/I | SALE PRICE | VC |
|---|---|---|---|---|---|---|
| SANTOS, MICHAEL J & THERESA M | 19517 0333 | 02-09-2005 | U | I | 10 | 1A |
| PARON, THERESA M | 10985 0080 | 10-01-1997 | U | I | 85,000 | 1E |
| US DEPT OF AGRICULTURE | 10475 0060 | 11-08-1996 | U | I | 72,250 | 1L |
| MILDE, JOHN A & LINDA L | 8583 0176 | 05-15-1993 | U | I | 70,000 | L |
| FARMERS HOME LOAN ADMIN | 8083 0223 | 06-15-1992 | U | I | 10,500 | L |

### PREVIOUS ASSESSMENTS (HISTORY)

| Year | Code | Assessed | Year | Code | Assessed V | Year | Code | Assessed |
|---|---|---|---|---|---|---|---|---|
| 2021 | 1010 | 188,700 | 2020 | 1010 | 189,200 | 2019 | 1010 | 167,300 |
| | 1010 | 126,500 | | 1010 | 126,500 | | 1010 | 126,500 |
| Total | | 315,200 | Total | | 315,700 | Total | | 293,800 |

### EXEMPTIONS

| Year | Code | Description | Amount |
|---|---|---|---|
| 2022 | 5C | RESIDENTIAL EXEMPTION | 0.00 |
| | | Total | 0.00 |

### OTHER ASSESSMENTS

| Code | Description | Number | Amount | Comm Int |
|---|---|---|---|---|
| | | | | |

This signature acknowledges a visit by a Data Collector or Assessor

### ASSESSING NEIGHBORHOOD

| Nbhd | Nbhd Name | B | Tracing | Batch |
|---|---|---|---|---|
| 0106 | | | | MARSTM |

### NOTES

### APPRAISED VALUE SUMMARY

| | |
|---|---|
| Appraised Bldg. Value (Card) | 198,400 |
| Appraised Xf (B) Value (Bldg) | 32,700 |
| Appraised Ob (B) Value (Bldg) | 0 |
| Appraised Land Value (Bldg) | 126,500 |
| Special Land Value | 0 |
| Total Appraised Parcel Value | 357,600 |
| Valuation Method | C |
| Total Appraised Parcel Value | 357,600 |

### BUILDING PERMIT RECORD

| Permit Id | Issue Date | Type | Description | Amount | Insp Date | % Comp | Date Comp | Comments |
|---|---|---|---|---|---|---|---|---|
| EXPR-21-11 | 08-06-2021 | 835 | Sid/Wind/Roof/ | 12,883 | | 100 | | Installation of 2 replacement wi |
| 20-3403 | 11-25-2020 | 822 | Insulation | 1,852 | | 100 | | damming, attic flat, attic acces |
| 65438 | 11-21-2002 | FB | Finish Basemen | 5,500 | 01-14-2002 | 100 | 01-01-2003 | |
| B27709 | 04-01-1985 | DW | Dwelling | 40,000 | 01-15-1987 | 100 | 12-31-1987 | MM 1 STOR |

### VISIT / CHANGE HISTORY

| Date | Id | Type | Is | Cd | Purpost/Result |
|---|---|---|---|---|---|
| 09-14-2021 | LH | 03 | | 16 | In Office Review |
| 05-07-2020 | LS | | | FR | Field Review |
| 04-30-2018 | KM | 01 | | 03 | Cycl Insp Comp |
| 02-04-2010 | MA | 22 | | 22 | Change of Address |
| 05-01-2007 | JK | 03 | | 16 | In Office Review |
| 07-17-2006 | PT | 02 | | 01 | Meas/Est |
| 10-01-1999 | MF | 01 | | 00 | Meas/Listed-Interior Acces |

### LAND LINE VALUATION SECTION

| B | Use Code | Description | Zone | LA | Land Type | Land Units | Unit Price | Size Adj | Site Index | Cond. | Nbhd. | Nbhd. Adj | Notes | Location Adjustmen | Adj Unit P | Land Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1010 | Single Fam | M-0 RF | 3 | | 0.480 AC | 118,750 | 1.84893 | 5 | 1.00 | 0106 | 1.200 | | 1.0000 | 263,470.6 | 126,500 |

| | Total Card Land Units | 0.48 AC | Parcel Total Land Area | 0.48 | | Total Land Value | 126,500 |
|---|---|---|---|---|---|---|---|

Property Location  75 WILLINGTON AVENUE  Map ID  MOst41/  Bldg Name  State Use  1010
Vision ID  5977  Account #  Bldg #  1  Sec #  1  of  1  Card #  1  of  1  Print Date 11/11/2021 10:57:31 A

Case 1:22-cv-10098-MPK  Document 1  Filed 01/25/22  Page 71 of 71

## CONSTRUCTION DETAIL

| Element | Cd | Description |
|---|---|---|
| Style | 01 | Ranch |
| Model | 01 | Residential |
| Grade: | C | Average |
| Stories | 1 | 1 Story |
| Exterior Wall 1 | 14 | Wood Shingle |
| Exterior Wall 2 | 25 | Vinyl Siding |
| Roof Structure | 03 | Gable/Hip |
| Roof Cover | 03 | Asph/F Gls/Cmp |
| Interior Wall 1 | 05 | Drywall |
| Interior Wall 2 | 07 | Knotty Pine |
| Interior Floor 1 | 09 | Pine/Soft Wood |
| Interior Floor 2 | 14 | Carpet |
| Heat Fuel | 03 | Gas |
| Heat Type | 05 | Hot Water |
| AC Type | 01 | None |
| Bedrooms | 03 | 3 Bedrooms |
| Full Baths | 1 | |
| Half Baths | 1 | |
| Extra Fixtures | | |
| Total Rooms | 5 | 5 Rooms |
| Bath Style | | |
| Kitchen Style | | |
| Occupancy | | |
| Accessory Apt | | |
| Foundation | 01 | Poured Conc. |
| Rms Prts | | |
| Bath Split | 11 | 1 Full-1 Half |

## CONSTRUCTION DETAIL (CONTINUED)

| Element | Cd | Description |
|---|---|---|
| | | |

### CONDO DATA

| Parcel Id | | C | | Owne | 0.0 |
|---|---|---|---|---|---|
| | | | B | S | |

| Adjust Type | Code | Description | Factor% |
|---|---|---|---|
| Condo Flr | | | |
| Condo Unit | | | |

### COST / MARKET VALUATION

| | |
|---|---|
| Building Value New | 236,188 |
| Year Built | 1985 |
| Effective Year Built | 1999 |
| Depreciation Code | A |
| Remodel Rating | |
| Year Remodeled | |
| Depreciation % | 16 |
| Functional Obsol | 0 |
| External Obsol | 0 |
| Trend Factor | 1 |
| Condition | |
| Condition % | |
| Percent Good | 84 |
| RCNLD | 198,400 |
| Dep % Ovr | |
| Dep Ovr Comment | |
| Misc Imp Ovr | |
| Misc Imp Ovr Comment | |
| Cost to Cure Ovr | |
| Cost to Cure Ovr Comment | |

### OB - OUTBUILDING & YARD ITEMS(L) / XF - BUILDING EXTRA FEATURES(B)

| Code | Description | L/B | Units | Unit Price | Yr Blt | Cond. Cd | % Gd | Grade | Grade Adj. | Appr. Value |
|---|---|---|---|---|---|---|---|---|---|---|
| BRR | Bsmt Rec Rm- | B | 500 | 8.05 | 2000 | | 84 | | 0.00 | 3,400 |
| BMT | Basement-Unfi | B | 1,176 | 26.01 | 2000 | | 84 | | 0.00 | 24,800 |
| FEP | Enclosed porc | B | 52 | 70.00 | 2000 | | 84 | | 0.00 | 4,500 |

### BUILDING SUB-AREA SUMMARY SECTION

| Code | Description | Living Area | Floor Area | Eff Area | Unit Cost | Undeprec Value |
|---|---|---|---|---|---|---|
| BAS | First Floor | 1,176 | 1,176 | 1,176 | 200.84 | 236,188 |
| BMT | Basement Area | 0 | 1,176 | 0 | 0.00 | 0 |
| FEP | Enclosed Porch | 0 | 52 | 0 | 0.00 | 0 |
| | Ttl Gross Liv / Lease Area | 1,176 | 2,404 | 1,176 | | 236,188 |